**TAYLOR et al. v. McMANIGAL, Deputy Com'r, et al.**

No. 2745.

District Court, W. D. Michigan, S. D.

Jan. 23, 1936.

McKenna, Harris & Schneider, of Chicago, Ill., and Alexander, McCaslin & Cholette, of Grand Rapids, Mich., for plaintiffs.

Joseph M. Donnelly, U. S. Atty., of Grand Rapids, Mich., for defendant K. G. McManigal.

W. M. Cunningham, of Benton Harbor, Mich., and Robinson & Bleecker, of Cleveland, Ohio, for defendant Ellice Watkins.

RAYMOND, District Judge.

The bill of complaint in this cause is filed under section 921 of title 33 of U.S. C. (33 U.S.C.A. § 921), which provides for review by injunction of awards made under provisions of the Longshoremen's and Harbor Workers' Compensation Act (33 U.S.C.A. §§ 901–950). Upon hearing on application for temporary injunction, it was agreed that the controlling question upon the merits is one of law and that the case would be submitted upon the record made before the Deputy Commissioner and upon briefs to be filed. This course has been followed.

The parties are in accord that the only question involved is whether or not the award should be adjudged invalid upon the ground that at the time of the accident which resulted in his death, the decedent was a member of the crew of the City of Grand Rapids, and therefore within the exception to the coverage provisions of section 903 of title 33, which in substance reads that no compensation shall be payable in respect of a disability or death of a master or member of a crew of any vessel. None of the fact findings of the

Deputy Commissioner as set forth in the fifth paragraph of the bill of complaint is challenged excepting the finding that "at the time of said accident and injury said deceased employee was not a member of the crew of the 'City of Grand Rapids' or any other vessel."

The conclusion which has been reached renders unnecessary discussion of several of the other legal issues presented in briefs of counsel.

Review of the entire evidence submitted to the Deputy Commissioner results in the conclusion that there is substantial evidence not only to sustain the fact findings of the Commissioner upon the subject in dispute, but to sustain the view that the fact that deceased was not a member of the crew of the vessel is established by a preponderance of the evidence. True, decedent had been an employee the previous season as a member of the crew of the vessel, and his wages for the season of 1935 had been fixed upon a basis of continued employment from about May 1, 1935, for a period of five months in connection with which it was intended that he should later, after navigation opened, be employed as second assistant engineer. However, it is equally true that at the date of the injury, May 28, 1935, the vessel was not expected to be ready for or in service for a period of several weeks; that no "crew" in the ordinarily accepted sense of that word was in charge of the vessel, and with few exceptions, it was not then known who would constitute the crew; that the work then in progress was the conditioning and fitting out of the vessel in preparation for sailing to commence about the last of June; that there was then no master of the vessel and that one did not come aboard until about June 25th; that a crew of the engineers' department ordinarily consisted of eighteen persons, and that the total number employed in repairs in that department at the time was only nine, of whom deceased was one; that the work upon which the nine men were engaged was putting pumps together, grinding valves, replacing pipe, building bridge walks, putting in grates, putting in drainpipes on the deck, refitting the plumbing in the staterooms, and other similar work. Not only was there work to be done in the engine room, but pipe and plumbing work in over 200 staterooms, and the work of refitting scupper pipe from the upper to the lower decks

was in progress. There were no firemen, helpers, or oilers.

The average time for fitting out a boat such as the City of Grand Rapids for active service is about two months. The captain of the boat testified that it could not be said with certainty that the men employed doing this work would be members of the crew until the time came for putting the boat into commission, but that most of them would have the opportunity to go with the boat if competent to have any position. He testified:

"A. Well, yes, they are going to be members when she sails. Of course, I know before the boat sails, definitely, just before she sails, but you don't know how many of them are going on the boat because everyone has a right to change his mind.

"Q. But when you get ready to sail you choose the crew? A. Yes."

There was, therefore, on the date in question, no "crew" in the ordinary usage of the term or as it is customarily used in connection with navigation.

While it might be held in some cases that one is a member of a crew before the personnel of the crew is entirely complete, under the record here the most that can be stated with accuracy is that deceased expected and intended to become a member of the crew when formed. The character of the work being done was such as to negative the conclusion that the vessel was then in charge of seafaring employees. In general, the work was of such a nature that it could as well be performed by ordinary workmen as by those accustomed to the perils and problems incident to navigation.

The following statement in the case of The Bound Brook (D.C.) 146 F. 160, 164, is pertinent: "When the 'crew' of a vessel is referred to, those persons are naturally and primarily meant who are on board her aiding in her navigation, without reference to the nature of the arrangement under which they are on board." Certainly it cannot be successfully maintained that those on board the vessel making repairs which were to continue over a period of several weeks, and which were necessary before the vessel could be placed in service, were primarily engaged in aiding in her navigation. Their purpose was to put the vessel in condition for navigation at a considerably later date. Their

responsibilities were related only indirectly to the navigation of the vessel. They were functioning as repairmen, not as navigators.

Subdivision (a) (1) of section 903 expressly excludes payment of compensation to those engaged to "repair any small vessel under eighteen tons net." The necessary inference from this exclusion is that those engaged in repairing large vessels shall receive compensation under the act. The City of Grand Rapids has 201 staterooms and a carrying capacity of 2,280, which places it unquestionably in the category of large vessels.

Therefore, the finding of the court is that the deceased was not a member of the crew of the vessel at the time of the accident, but was an employee engaged in assisting to repair and fit out the vessel for navigation, with the expectation that he would become a member of the crew when formed, and that the Deputy Commissioner's finding to that effect is sustained by competent evidence.

An order will be entered dismissing the bill of complaint.