## ALASKA DEPARTMENT OF HEALTH v. ALASKA INDUSTRIAL BOARD et al.

### No. 6481–A.

United States District Court
D. Alaska. First Division.

Dec. 5, 1951.

Faulkner, Banfield & Boochever, Juneau, Alaska, for plaintiff.

Howard D. Stabler, Juneau, Alaska, for defendant.

FOLTA, District Judge.

In this proceeding, challenging the validity of the award of the workmen's compensation under Territorial law, the plaintiff contends that the case falls exclusively within the admiralty jurisdiction because the vessel was "in navigation" and the deceased's employment was that of master. On the other hand, defendant contends that the local workmen's compensation act governs because the vessel was laid up for the winter and the deceased was employed as watchman; but that if the service was maritime it was nevertheless local in character and hence, governed by the "maritime but local" doctrine.

The plaintiff's reply to this contention is that even so no compensable case is presented because the accident resulting in the death of the deceased did not arise out of or in the course of his employment.

The undisputed facts are that on November 15, 1950, the deceased was employed as master of the Motorship Hygiene, a sea going vessel of 273 gross tons operated by the Department of Health of the Territory of Alaska. At that time the vessel was moored to a float in the navigable waters of Gastineau Channel at Juneau, in a temporary lay-up status because some of the members of the crew were on vacation and there was a vacancy in the position of doctor attached to the vessel. The deceased was told that he could spend the nights at home but that he was to be aboard during the day to supervise the crew and see that the vessel was secure before leaving it at the end of the day. Deceased, however, chose to sleep aboard rather than at home and brought his personal effects aboard. The float to which the Hygiene was moored was connected by means of a ramp to a pile structure ashore, the angle of the ramp depending on the stage of the tide at any particular time.

The deceased left the vessel at about 4 p. m. November 15 and spent the evening in a local bar. At about 1 a. m. the following morning he left the bar in a cab to return to the Hygiene. He was last seen by the cab driver, standing at the head of the ramp. The weather was stormy and the angle of the ramp was steep because the tide

was low. The railing of the ramp at its lower end was gone, having been broken off, and neither the ramp nor the float was lighted. Deceased's body was recovered from the water 5 days later, approximately 20 feet from the float.

The Board found that the deceased fell from the ramp and float and was drowned; that intoxication was not the sole or proximate cause of death and that although the deceased's title was that of master, his duties were those of a watchman because the vessel was laid up. After concluding that his employment was not maritime, which was obviously sufficient to dispose of the jurisdictional question, the Board inconsistently further concluded that the activity in which the deceased was engaged was a matter of mere local concern—a conclusion which is relevant only if the activity is conceded to be maritime in character—and awarded the widow $6300.

The findings that the vessel was laid up in the sense that it was not in navigation and that the deceased was hired as a watchman are not supported by any substantial evidence. The uncontradicted testimony is that the vessel was temporarily laid up because a part of the crew was on vacation and the vessel was without a doctor; that there was a sufficient crew to navigate the vessel, that she was in a condition to go to sea and that the deceased was hired as master with the usual responsibilities of a master and at the salary fixed therefor of $410 a month. Hence, the conclusions that the vessel was not in navigation and that the deceased was not a seaman are erroneous, Daffin v. Pape, 5 Cir., 170 F.2d 622. Illustrative cases in which the vessel was held to be not in navigation are: Hawn v. American Steamship Co., 2 Cir., 107 F.2d 999; Seneca Washed Gravel Corporation v. McManigal, 2 Cir., 65 F.2d 779; Taylor v. McManigal, D.C., 14 F.Supp. 419 and Antus v. Inter Ocean Steamship Co., 6 Cir., 108 F.2d 185. Those in which the vessel was held to be in navigation are: Hunt v. United States, D.C., 17 F.Supp. 578, Affirmed 2 Cir., 91 F.2d 1014 certiorari denied 302 U. S. 752, 58 S.Ct. 271, 82 L.Ed. 581; Carumbo v. Cape Cod Steamship Co., 1 Cir., 123 F.2d 991 and United States v. Lind-

gren, 4 Cir., 28 F.2d 725. In the instant case it is clear that the employment was maritime in the traditional sense and not of such a local character as to warrant the application of the "maritime but local" doctrine. Cf. Millers' Indemnity Underwriters v. Braud, 270 U.S. 59, 46 S.Ct. 194, 70 L.Ed. 470.

Unfortunately, the conclusion I have reached will result in hardship, but it is a well known fact that seamen, including, of course, masters, have resisted all attempts to extend to them the principles of workmen's compensation preferring to rely on the Jones Act, 46 U.S.C.A. § 688, and the ship owner's absolute liability to furnish a seaworthy vessel for redress.

The decision of the Industrial Board is, therefore, reversed.