## HAWN v. AMERICAN S. S. CO.
### No. 161.

Circuit Court of Appeals, Second Circuit.
Dec. 11, 1939.

Desmond & Drury, of Buffalo, N. Y. (Edward J. Desmond, John E. Drury, Jr., and Charles S. Desmond, all of Buffalo, N. Y., of counsel), for appellant.

Brown, Ely & Richards of Buffalo, N. Y. (Laurence E. Coffey and W. Alexander Eldridge, both of Buffalo, N. Y., of counsel), for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

PER CURIAM.

The question in this case is whether the plaintiff, Hawn, shall be allowed to hold the verdict of a jury in his favor in an action to recover for injuries suffered and maintenance and cure, as a seaman aboard a ship in Buffalo Harbor. The judge, having reserved decision upon the defendant's motion for a verdict, took a verdict and later granted the motion. The plaintiff appealed. The appeal turns altogether upon whether the plaintiff was a "member of a crew" of the ship at the time of his injuries. § 902(3), Title 33, U. S.Code, 33 U.S.C.A. 902(3). If not, he was limited to compensation under the Longshoremen's and Harbor Workers' Compensation Act. The facts are as follows. He was in fact a seaman, though out of work at the time, November 15, 1938. The ship had been out of commission since November, 1937, when she had brought a cargo of grain to Buffalo. In the spring of 1938 she was hauled by tugs into the outer harbor and anchored; nobody was kept on board her but a shipkeeper. She had lost her classification in March, and could not regain it without a new inspection. Apparently she was not employed for any purpose during the summer, but in October her owners decided to use her for the storage of soya beans during the winter. One, Healy, a licensed master, took charge of shifting her alongside a grain elevator, and for that purpose hired two tugs, her engines not being available. He then employed six men by the day to handle the lines, and himself left the ship on November 4th, while she was alongside the wharf. In filling her it became necessary from time to time to warp her back and forth along the wharf, so that the grain chutes could reach her hatches, and this the men did by hand, having no steam. It was while the plaintiff, as one of these men, was helping to move her, that he injured his hand by catching it in a winch. She was taken away from the wharf in January, 1939, to make room for another vessel, but brought back in February.

It is impossible to define the phrase, "member of a crew", in general terms; the words are colloquial and their fringe will always be somewhat ragged. Perhaps the best hope is that, as the successive variants appear, they will finally serve rudely to fix the borders. Nevertheless, it is some guide that the word, "crew", was used to distinguish those who were not longshoremen and harbor workers, and its purpose ought to mark its scope. Hence the decisions have inclined to put weight both on the fact that the ship is being navigated, and that the work is that ordinarily done by seamen. Neither serves as a perfect test because "navigation" is not a word of art, and the crew of a ship always used to, and frequently still does, lade and unlade her, though now that is ordinarily done by long-shoremen. Yet they help somewhat to a conclusion. As for navigation, it does not cease when the ship is in drydock for repairs, awaiting new business. Hunt v. United States, D.C., 17 F.Supp. 578; affirmed 2 Cir., 91 F.2d 1014. On the other hand she is withdrawn from navigation, if laid up for the winter with a shipkeeper. Seneca W. G. Corp. v. McManigal, 2 Cir., 65 F.2d 779, Cf. Gonzales v. United States S. B. E. F. Corp., D.C., 3 F.2d 168. The case at bar is between these two; she was not to transport goods, but to store them in the stead of a grain elevator. True, she was to be moved in the sense that her position was to be changed; and if the decision of Judge Benedict in The Joshua Leviness, Fed.Cas.No.7549, means that movement for profit of any kind whatever is necessarily "navigation" for all purposes, this movement was such. However, Judge Benedict was deciding a case under the navigation laws, and while we see no reason to challenge the result, we do not feel bound to apply it as a general principle to all situations. We think with the judge in the case at bar that this ship was withdrawn from navigation. If on the other hand we consider the character of the services rendered, the same conclusion follows. Union Oil Co. v. Pillsbury, 9 Cir., 63 F.2d 925; Di-

omede v. Lowe, 2 Cir., 87 F.2d 296; South Chicago C. & D. Co. v. Bassett, 7 Cir., 104 F.2d 522. A ship's crew must of course handle her lines, and warp her alongside wharves when she docks; indeed, they may have to move her during her lading and unlading. But so will longshoremen; and here, when no navigation properly speaking was to follow, the work seems to us to be rather like theirs than like seamen's. We cannot find any à priori preference to direct us; the award to a seaman is greater than compensation, but compensation covers far more occasions. There seems to be no altogether clear choice between the two. We do not believe that this ship had a "crew".

Judgment affirmed.