**PANAMA AGENCIES CO. v. FRANCO.**

**No. 9123.**

Circuit Court of Appeals, Fifth Circuit.

April 19, 1940.

Jas. Hy. Bruns and Harry McCall, both of New Orleans, La., and Wm. A. Van Siclen, of Ancon, Canal Zone, for appellant.

W. B. Boggs, of Cristobal, Canal Zone, for appellee.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

SIBLEY, Circuit Judge.

Appellant, Panama Agencies Company, is a stevedoring company operating at Cristobal, Canal Zone, and appellee, Emenejildo Franco, was on Sept. 23, 1937, a longshoreman employed by it in loading the steamship Director, moored at a Cristobal pier. A heavy steel girder about twelve inches wide which supports the hatch covering had been by appellant's men, in Franco's absence, placed on its narrow edge on the deck near the hatch combing. Franco was ordered by the foreman to strike another girder which had been placed across the hatch, to make it fall into place. The vibration caused the first mentioned girder to fall over against Franco's leg, crushing it against the hatch-combing. A year later Franco sued appellant in the District Court of the Canal Zone alleging negligence in failing to provide competent and careful supervisors of the work, in placing the girder in an unsafe manner so as easily to fall, and in directing plaintiff to work in an unsafe and hazardous place aboard the steamship. The answer denied negligence, set up assumption of obvious risk, and recklessness on plaintiff's part; and that on May 5, 1938, for a sufficient consideration plaintiff had under seal released defendant from all consequences, and that no part of the consideration then paid had been returned. The case went to trial as a law suit before a jury, and a verdict was rendered for the plaintiff. On this appeal the questions argued are: (1) Does the "Jones Act" apply? (2) Is the release a bar, the consideration not having been tendered back? (3) Ought the validity of the release to have been tried by the Court, apart from the jury trial? (4) Ought a verdict to have been directed for defendant?

■ 1. The Merchant Marine Act, Sect. 33, 46 U.S.C.A. § 688, is general in all its terms, and is valid legislation under the admiralty powers of the federal government. Panama Railroad Co. v. Johnson, 264 U.S. 375, 44 S.Ct. 391, 68 L.Ed. 748. Stevedores are seamen within its meaning. International Stevedoring Co. v. Haverty, 272 U.S. 50, 47 S.Ct. 19, 71 L.Ed. 157. And this is true though the stevedore be injured or killed on a foreign ship in a harbor of the United States. Uravic v. Jarka Co., 282 U.S. 234, 51 S.Ct. 111, 75 L.Ed. 312. The Longshoremen's Act of March 4, 1927, 33 U.S.C.A. § 901 et seq., has superseded the Merchant Marine Act in its application to longshoremen, but by Sect. 3, 33 U.S.C.A. § 903, the Longshoremen's Act applies only where injury occurs "upon the navigable waters of the United States", and by the preceding section the United States means the several States and Territories and the District of Columbia; so it does not apply in the Canal Zone. Stevedores injured on ships in the Canal Zone are still under the Merchant Marine Act if they ever were. They easily might be, because the federal statutes relating to injury and death of railway employees, which are adopted into Section 33 of the Merchant Marine Act, are of force in the Canal Zone. 45 U.S.C.A. § 52. This Court assumed that the Merchant Marine Act applied to stevedores injured on ship at Cristobal in Arthur v. Compagnie Generale Transatlantique, 5 Cir., 72 F.2d 662. It is now urged in view of what was said in Luckenbach Steamship Co. v. United States, 280 U.S. 173, 50 S.Ct. 148, 74 L.Ed. 356, that the entire harbors of Colon and Panama are foreign waters according to the treaty between the United States and the Republic of Panama. In that case the Supreme Court declined to decide which country had the ultimate sovereignty over the harbors, passing only on the application of a statute relating to the mails. Nor need we discuss ultimate sovereignty here, which is a political rather than a judicial question. The United States have a general power of legislation in the Canal Zone, and without any objection from the Republic of Panama, have set up there the District Court of the Canal Zone, with two divisions, one including Balboa and the other Cristobal, 48 U.S.C.A. § 1344; and

given it jurisdiction (Sec. 1345) of "all cases in admiralty" and "all cases at law involving principal sums exceeding $500"; adding, "The jurisdiction in admiralty herein conferred upon the district judge and the district court shall be the same as is exercised by the United States district judges and the United States district courts." An injury to a stevedore on ship is an admiralty tort. Atlantic Transport Co. v. Imbrovek, 234 U.S. 52, 34 S.Ct. 733, 58 L.Ed. 1208, 51 L.R.A.,N.S., 1157. When a cause of action in admiralty is asserted in a court of law its substance is unchanged. Chelentis v. Luckenbach Steamship Co., 247 U.S. 372, 38 S.Ct. 501, 62 L.Ed. 1171. It is said in Lindgren v. United States, 281 U.S. 38, 44, 50 S.Ct. 207, 210, 74 L.Ed. 686, "It is plain that the Merchant Marine Act is one of general application intended to bring about the uniformity in the exercise of admiralty jurisdiction required by the Constitution." So in Panama R. Co. v. Johnson, 264 U.S. 375, 392, 44 S.Ct. 391, 396, 68 L.Ed. 748, it is asserted: "The statute extends territorially as far as Congress can make it go, and there is nothing in it to cause its operation to be otherwise than uniform." We think it can be applied to a stevedore boarding a ship to work at Cristobal, an American town, though as in this case the ship be English and the stevedore an alien. Franco is suing his employer, and the contract creating the relationship was doubtless made at Cristobal.

2. The release, written in English and signed by mark and purported seal, recites the receipt of $300, and in consideration thereof releases, acquits and discharges Panama Agencies Company from all actions, claims and demands growing out of personal injuries, known or unknown, as the result of the accident on Sept. 23, 1937. Franco, without pleading in reply, attacked it by his testimony that he could neither read nor write English or Spanish, nor speak English; that he received the $300 and made his mark to the paper understanding it to be a mere receipt for the money paid him for ten months lost time, and not a release of his right to sue for his injury. His negotiation was with the Manager of Panama Agencies Company, who spoke Spanish. Franco said: "The only thing told him was that he was being paid the $300 for the time he was in the hospital. The release was not read to him and he did not understand its full meaning and purport. * * *

He did not understand the $300 was in full settlement of any claim he had against the Company because of his injury. No one explained the contents of the release nor told him what the document was. The young man (who attested it and certified to its reading and explanation), told me the $300 was only in payment of the time I was in the hospital, but he didn't say nothing else about what was contained in the receipt." There was contradictory testimony; but the Manager said he paid the $300 only for the lost time, denying any other liability in the negotiation. The suit as brought asserts no claim for time theretofore lost, and no evidence as to it was introduced. Franco's position, consistently held, was that he had been paid $300 for his lost time for which he gave a receipt, but had never been paid for nor released his claim for pain and suffering and maiming; that the paper purporting to be a release of this claim was void for misrepresentation of its contents in obtaining its execution, and for taking advantage of his inability to read it. This is not the case of one able to read who executes a writing without reading it, there being no emergency or trick to keep him from reading. Franco might as well have been a blind man. He had to rely on what was told him about the paper. If he was by the opposite party or its representatives misinformed or half-informed and overreached, the paper was not a deed of release but a fraud, void at law and in equity.

When one has been induced by fraud to enter into a contract, he must ordinarily on discovery of the fraud promptly elect whether he will affirm or disaffirm the contract, and if the latter return what he received if of any value. Otherwise he will at law and in equity be held to have ratified and confirmed it. Here there was, according to Franco, no fraud in inducing him to agree to settle for his time for $300. He does not disaffirm, but stands by that agreement. He says there was a fraud in creating the written memorial of that contract, in inducing him to execute a paper whose contents were misrepresented to him. He can annul this paper for that reason without abandoning the real contract, and without returning the $300 if it was really paid to settle his lost time as he says, and not for his signature to the paper, or for a general settlement. This was a question of fact.

3. There was no need and no propriety for the judge to decide the validity of the release apart from the jury trial. This is necessary only when by equitable pleading an equitable issue is raised. In such a case the judge as chancellor will first hear the equitable issue, and then try the law case before the jury if one still remains. Liberty Oil Co. v. Condon Nat. Bank, 260 U.S. 235, 43 S.Ct. 118, 67 L.Ed. 232. When a plaintiff does not make an equitable replication to a plea of release, but attacks it only on grounds good at law, no case arises for a separate trial of the plea before the judge. Radio Corporation of America v. Raytheon Mfg. Co., 296 U.S. 459, 56 S.Ct. 297, 80 L.Ed. 327. If Franco had claimed not a concealment and misrepresentation of the contents of the paper, which is fraud, but only an accident or mistake on his part against which equity might relieve; or if for fraud he had sought the *cancellation* of the release, which is *a remedy* obtainable only in equity, the matter would be otherwise. Even where cancellation is not sought some courts hold that an attack for a fraud *inducing the agreement* manifested by a sealed instrument must be in equity. Others, including this court, have held that where no cancellation is asked fraud of that sort may be shown at law. Kansas City Southern R. Co. v. Martin, 5 Cir., 262 F. 241; Wagner v. National Life Ins. Co., 6 Cir., 90 F. 395. All courts agree that where the fraud is in obtaining *the execution of an instrument contrary to the true agreement,* and no cancellation is prayed, that the fraud can be proved at law. Mutual Ben. Ass'n v. Warrell, 8 Cir., 96 F.2d 447, and cases cited. George v. Tate, 102 U.S. 564, 26 L.Ed. 232; Union Pac. R. Co. v. Harris, 158 U.S. 326, 15 S.Ct. 843, 39 L.Ed. 1003; Lynch Enterprise Corp. v. Dulion, 5 Cir., 45 F.2d 6, 7; Clarke v. Order United'Com. Trav., 5 Cir., 79 F.2d 564.

4. It is asserted the case was tried under Sect. 33 of the Merchant Marine Act, though neither the pleading nor the bill of exceptions alludes to it. The charge of the court is not in the record. If that Act be applied, liability is shown by the plaintiff's evidence. If that Act is inapplicable, still a case was made sufficient to withstand the motion for directed verdict. What has been said about the release makes it plain that its validity became a question of fact. As to negligence, it was testified that the foreman was more than a foreman, that he had charge of the work and could hire and discharge the men. Franco had nothing to do with opening the hatch and placing the girder, which was 12 inches wide, insecurely on its narrow edge upon a slanting deck and near the hatch, which an experienced witness testifies was dangerous and bad practice, it being more safe to lay it flat. Franco was directly ordered by the foreman to go where he went and do what he did, which upset the beam without his touching it. The jury could find that no act of a fellow servant injured him, but that the appellant's alter ego put him to work in an unnecessarily dangerous place and gave an order whose bad consequences he ought to have foreseen.

No error appearing, the judgment is affirmed.