## CARUMBO v. CAPE COD S. S. CO.

### No. 3679.

Circuit Court of Appeals, First Circuit.

Dec. 3, 1941.

992

Harry Kisloff, of Boston, Mass., for appellant.

Thomas H. Walsh, of Boston, Mass. (Joseph F. Dolan, of Boston, Mass., on the brief), for appellee.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

MAHONEY, Justice.

A civil action was brought by the plaintiff who was injured on September 14, 1940, while he was working aboard the defendant's vessel, the S. S. Steel Pier, docked at Commercial Wharf, Boston, for the recovery of damages under Section 33 of the Merchant Marine Act of 1920, 41 Stat. 1007, 46 U.S.C.A. § 688, called the Jones Act. After the presentation of the plaintiff's evidence, the defendant moved for a directed verdict on the grounds that there was insufficient evidence of negligence, that the plaintiff was not a seaman under the Jones Act and, even if he were, his sole remedy was under the Longshoremen's and Harbor Workers' Compensation Act, hereinafter called the Longshoremen's Act, 44 Stat. 1424, 33 U.S.C.A. § 901 et seq., because he was not a "member of a crew".

The trial court reserved action on the motion but during examination of the first witness for the defense interrupted the trial and directed the jury to return a verdict for the defendant on the ground that the plaintiff's "right of action would lie under the Longshoremen's and Harbor Workers' Act in a different court". The plaintiff has appealed from the granting of the motion for a directed verdict.

There was testimony to the following effect: The plaintiff was an employee of the defendant, owner of the S. S. Steel Pier, an excursion vessel which ran between Boston and Provincetown during the summer season. At the beginning and end of each season, it was customary for some of the men to work in the engine room, either preparatory to sailing or to laying up for the winter. The plaintiff, who had been to sea for about six years and held fireman, oiler and water tender certificates, worked in the engine room in the spring of 1940, getting her ready for sea, and during the summer season of that year was employed as an oiler, receiving $90 a month and found. He and other workers remained on the vessel at the conclusion of the summer season for the purpose of doing some work in the engine room. When the vessel tied up at Boston at the end of the season the plaintiff asked for a discharge and was told: "You won't need it because you are being kept on in case this ship is taken over". The men in the engine room including the plaintiff were told by the officers of the ship to stand by and wait for orders because negotiations were being had with the government to take the ship over. From that time on the men in the engine room were employed in making minor repairs to the vessel, were paid 60 cents an hour, and ate and for the most part slept ashore. The chief engineer asked the plaintiff for his telephone number so that he could reach him over the weekend "for if anything turned up in the meantime he wanted to get in touch with all his hands immediately and have them on board".

The accident happened shortly after the season ended. "The officers on board the ship that day were first officer, Mr. Durrier; pilot, Mr. Shackley; second officer, Mr. Woods; first assistant engineer, Mr. Browne; second assistant engineer, Mr. Frew and third assistant engineer, Mr. Wakefield. There were three oilers, three combination firemen and water tenders, a skeleton deck crew consisting possibly of one A.b and four ordinaries, and possibly three in steward department." The engine room men were under orders and supervision of the ship's officers; regular sea watches were being stood at this time and at least one boiler was kept alive. The nature of the work done by the engine room crew resembled the work usually done in the spring rather than the work usually done in the fall. Nothing was taken apart permanently until about a week after the accident when orders were given to tie up for the winter.

When the accident occurred the plaintiff was taking the check valve off the auxiliary feed line on the after starboard boiler and he was scalded by steam and hot water, after he had been told by the fireman that everything was all right. He was taken to a marine hospital where the captain furnished a master's certificate. A report was made by the master to the local inspectors and to the Bureau of Marine Inspection and Survey in Washington under date of September 17, 1940, in which the plaintiff is described as an "oiler" and a "crew member". On November 13, 1940, about a month after the filing of the complaint in this case, the president of the defendant company sent to the United States Employees' Compensation Commission a report which described the plaintiff as an oiler, three and one-half months in service, and injured in his regular occupation.

The pertinent provisions of the statutes involved are as follows:

The Jones Act, which was passed in 1920, provides:

"Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply * * *." 46 U.S.C.A. § 688.

The Longshoremen's Act, which was passed in 1927, provides:

"Sec. [§] 903.

"(a) Compensation shall be payable under this chapter in respect of disability or death of an employee * * *. No compensation shall be payable in respect of the disability or death of—(1) a master or a member of a crew of any vessel. * * *" 33 U.S.C.A. § 903.

"Sec. [§] 905.

"The liability of an employer prescribed in section 904 of this chapter shall be exclusive and in place of all other liability of such employer to the employee * * *."

If the plaintiff is a "seaman" under the Jones Act and a "member of a crew" under the Longshoremen's Act, then he is free to sue under the Jones Act. If he is not a "member of a crew" under the Longshoremen's Act, he must proceed under that Act and he is not entitled to maintain this suit under the Jones Act. Silva v. Gorton Pew Fisheries Co., Ltd., 1939, 303 Mass. 531, 22 N.E.2d 31; see South Chicago Co. v. Bassett, 1940, 309 U.S. 251, 256, 60 S.Ct. 544, 84 L.Ed. 732.

The issues are: Was there substantial evidence on which a jury could reasonably find that the plaintiff was a "seaman" under the Jones Act? Was there substantial evidence on which a jury could reasonably find that the plaintiff was a "member of a crew" under the Longshoremen's Act? If there was such evidence, then the district judge committed error in granting the motion for a directed verdict.

A determination of these issues necessitates defining the terms "seaman" and "member of a crew". In Hawn v. American S. S. Co., 2 Cir., 1939, 107 F.2d 999, 1000 it was said:

"It is impossible to define the phrase, 'member of a crew', in general terms; the words are colloquial and their fringe will always be somewhat ragged. Perhaps the best hope is that, as the successive variants appear, they will finally serve rudely to fix the borders."

There is added difficulty in our case, in that we must at least attempt to fix borders which will serve as a basis for intelligible instructions to a jury. Most courts have not been required to face this additional problem because almost all of the cases which involve the issues presented here have been in admiralty or before the deputy commissioner or in equity. While courts have sometimes used the expressions "seaman" and "member of a crew" interchangeably, Moore Dry Dock Co. v. Pillsbury, 9 Cir., 1938, 100 F.2d 245; Diomede v. Lowe, 2 Cir., 1937, 87 F.2d 296, it is well established that the word "seaman" under the Jones Act does not mean the same thing as "member of a crew" under the Longshoremen's Act. "Seamen" is broad enough to cover both one who is a "member of a crew" and one who is not a "member of a crew". Thus, longshoremen have been held not to be members of a crew, Silva v. Gorton Pew Fisheries Co., Ltd., supra; Panama Agencies v. Franco, 5 Cir., 1940, 111 F.2d 263; and yet they have been held to be seamen, International Stevedoring Co. v. Haverty, 1926, 272 U.S. 50, 47 S.Ct. 19, 71 L.Ed. 157; Panama Agencies v. Franco, supra; see South Chicago Co. v. Bassett, supra, 309 U.S. at page 257, 60 S.Ct. 544, 84 L.Ed. 732. To recover in this suit, plaintiff must be a "seaman" and a "member of a crew".

The cases hold that a person who works aboard a ship cannot be a "seaman" if the ship is not in navigation. Antus v. Interocean S. S. Co., 6 Cir., 1939, 108 F.2d 185; Hunt v. United States, D.C.S.D.N.Y. 1936, 17 F.Supp. 578, affirmed 2 Cir., 1937, 91 F.2d 1014; Gonzales v. United States Shipping Board, D.C.E.D.N.Y.1924, 3 F. 2d 168. To be a "seaman", however, it is not required that the employee's work be in aid of navigation or that he be on board primarily to aid in navigation. International Stevedoring Co. v. Haverty, supra; Panama Agencies v. Franco, supra. Moreover, the Jones Act has always been liberally construed. Warner v. Goltra, 1934, 293 U.S. 155, 55 S.Ct. 46, 79 L.Ed. 254; Cortes v. Baltimore Insular Lines, 1932, 287 U.S. 367, 375, 53 S.Ct. 173, 77 L.Ed. 368. "Verbal niceties were bent to the overmastering purpose of the act to give protection to workers injured upon ships." Warner v. Goltra, supra, 293 U.S. at page 156, 55 S. Ct. at page 47, 79 L.Ed. 254. It was said in that case, at page 160 of 293 U.S., 55 S.Ct. 46, 79 L.Ed. 254 (master of a tug boat) and in Uravic v. F. Jarka Co., 1931, 282 U.S. 234, 239, 51 S.Ct. 111, 75 L.Ed. 312 (an American citizen employed as a stevedore unloading a vessel flying the German flag in New York harbor) that the word "seaman" in the Jones Act is to be given broader scope than "seaman" as defined in 46 U.S.C.A. 713:[1]

"In the construction of this chapter, every person having the command of any vessel belonging to any citizen of the United States shall be deemed to be the 'master' thereof; and every person (apprentices excepted) who shall be employed or engaged to serve in any capacity on board the

---

[1] This statutory definition is not part of the Jones Act. See Warner v. Goltra, supra, 293 U.S. at page 160, 55 S.Ct. 46, 79 L.Ed. 254.

same shall be deemed and taken to be a 'seaman'; and the term 'vessel' shall be understood to comprehend every description of vessel navigating on any sea or channel, lake or river * * *."

That definition itself "is directed to extension not to restriction". Warner v. Goltra, supra, 293 U.S. at page 161, 55 S. Ct. at page 49, 79 L.Ed. 254; Uravic v. F. Jarka Co., supra, 282 U.S. at page 239, 51 S.Ct. 111, 75 L.Ed. 312; Resigno v. F. Jarka Co., 248 N.Y. 225, 242, 162 N.E. 13. The process of liberal construction of the Jones Act cannot now be ignored because Congress has seen fit to pass the Longshoremen's Act. As a result of the cases, we feel constrained to hold that one who does any sort of work aboard a ship in navigation is a "seaman" within the meaning of the Jones Act.

■■■ It is also necessary to determine the meaning of the phrase a "member of a crew". The Supreme Court has said in South Chicago Co. v. Bassett, supra, 309 U.S. at page 260, 60 S.Ct. at page 549, 84 L.Ed. 732: A "member of a crew" is one of "those employees * * * who are naturally and primarily on board to aid in her navigation". One cannot be a "member of a crew" if the ship is not in navigation. This requisite is emphasized in South Chicago Co. v. Bassett, supra, 309 U.S. at page 260, 60 S.Ct. 544, 84 L.Ed. 732; Hawn v. American S. S. Co., supra, 107 F.2d at page 1000; Seneca Washed Gravel Corporation v. McManigal, 2 Cir., 1933, 65 F. 2d 779. There must also be a more or less permanent connection between the ship and the worker, A. L. Mechling Barge Line v. Bassett, 7 Cir., 1941, 119 F.2d 995; Maryland Casualty Co. v. Lawson, 5 Cir., 1938, 94 F.2d 190, 192,[2] as opposed to the temporary relationship existing in the case of a carpenter or a mechanic who is brought aboard only to do repair work while the ship is in port. Consequently, a longshoreman is not a "member of a crew". Panama Agencies v. Franco, supra; Silva v. Gorton Pew Fisheries Co., supra. The

character of the work being done at the time of the accident is not determinative. Maryland Casualty Co. v. Lawson, supra. The requirements that the ship be in navigation; that there be a more or less permanent connection with the ship; and that the worker be aboard primarily to aid in navigation appear to us to be the essential and decisive elements of the definition of a "member of a crew". It is most important to note that one is aiding in navigation even though he happens to be a cook or an engineer. The whole ship's company is aiding in navigation. A. L. Mechling Barge Line v. Bassett, supra; Maryland Casualty Co. v. Lawson, supra; cf. The Buena Ventura, D.C.N.Y.,1916, 243 F. 797.

■■■ There remains to be defined the word "navigation". It has been held that a ship is not in navigation if there is no present hope or intention of having her go to sea and if it would take a long time to put her in shape for an ocean voyage. Gonzales v. United States Shipping Board, supra. Furthermore, a ship is not in navigation which has been laid up for the winter. Seneca Washed Gravel Corp. v. McManigal, supra. A ship is in navigation, however, when it returns from a voyage and is taken to dry dock to undergo repairs preparatory to making another trip. Hunt v. United States, supra; Hawn v. American S. S. Co., supra. It is our opinion that a ship is in navigation, although docked, if it remains in readiness for another voyage. It need not be under contract.

■■■ It is clear from the testimony that there was substantial evidence presented upon which a jury could reasonably find that the ship was still in navigation because it was remaining ready for another voyage. It could also find that the plaintiff was on board primarily to aid in navigation and that his more or less permanent connection with the ship in this capacity had not been severed. While the fact that he was paid by the hour and ate and slept ashore is evidence tending to show that he was not a member of the crew, South Chi-

---

[2] There is the following helpful language in this case:

"There is implied a definite and permanent connection with the vessel, an obligation to forward her enterprise and to protect her in emergency, and a right to look to her and her earnings for wages. If she has a master, there is subjection to his commands. The nature of the work done is not determinative. Engineers and cooks as well as sailors are included. Longshoremen who load and unload a vessel under temporary local employment do not become members of the crew, nor do mechanics who similarly come aboard her to repair or clean or paint her; nor do those permanently employed upon her cease to be members of the crew because they are put at the same sort of work."

cago Co. v. Bassett, supra; A. L. Mechling Barge Line v. Bassett, supra; Henderson v. Jones, 5 Cir., 1940, 110 F.2d 952; Moore Dry Dock Co. v. Pillsbury, supra, we do not feel that that necessarily prevents him from being a member of the crew. Consequently the jury could find he was a "seaman" under the Jones Act and a "member of a crew" under the Longshoremen's Act.

Since the trial court's action was not based on the ground that there was insufficient evidence of negligence to make out a case for the jury, and since the defendant has not argued that the court's decision should be sustained on this ground, we need not consider any question of negligence. At any rate, there was ample evidence of negligence.

The judgment of the District Court is reversed with costs to the appellant; and the case is remanded to that court for further proceedings not inconsistent with this opinion.