ALVIN B. RUBIN, Circuit Judge:
 

 The defendant was found guilty of making false statements in his petition for bankruptcy. He attacks his conviction on a number of grounds, including the admission in his criminal trial of his former lawyer’s testimony concerning alleged privileged conversations between him and his erstwhile counsel. Confidential communications from a client to a lawyer for the purpose of obtaining legal advice and the lawyer’s responses to those inquiries are privileged. If, however, the client seeks legal advice for the purpose of being assisted or guided in the commission of a crime or the perpetration of a fraud, the communication is not sheltered. We conclude that the client was engaged in a continuing fraudulent or criminal activity, sought the lawyer’s advice for the purpose of furthering that wrongful activity, and utilized that advice to commit a crime. For these reasons, we hold that the lawyer’s testimony was properly admitted. We reject, however, the government’s contention that, because the client had sued the former lawyer for malpractice relating to services concerned with filing the bankruptcy petition, the client waived any privilege that might otherwise have applied.
 

 Finding all the other arguments for reversal of his conviction to be without merit, we affirm.
 

 I.
 

 Tony Ballard operated an auto parts business in Jackson, Mississippi. His lawyer and sometime business associate at the time was Ron Smith. In August 1979, Ballard deeded nine acres in Madison County, Mississippi, to Smith, who in turn deeded the property to Ballard’s father-in-law. Though the facts are contested, it appears that Ballard’s father-in-law gave Smith a check for $14,000. The check was cashed; Smith kept $4,000, an amount he said represented legal fees due him, and gave the remaining $10,000 to Mrs. Ballard, who obtained a safe deposit box and put the money in the box.
 

 Ballard contends he entered into this transaction both to pay legal fees to Smith and “so a tax lien could be avoided on this land when bankruptcy was filed.” The jury might reasonably have concluded from Smith’s testimony that the purpose of the transaction was to conceal some of Ballard’s assets from his creditors, and, indeed, Ballard’s position asserts the purpose at least of hiding his assets from the tax collector.
 

 Ballard contends that a month later, in September, he paid Smith a fee of $1000 to file a bankruptcy petition, but that Smith later refused to represent him. Ballard then retained another lawyer who, on July 8, 1980, filed a bankruptcy petition on Ballard’s behalf in the Southern District of Mississippi. Approximately a year later, Ballard’s debts were discharged in bankruptcy and the bankruptcy estate was closed.
 

 In 1982, Ballard filed a civil suit against Smith and one of Ballard’s former business associates, claiming,
 
 inter alia,
 
 that Smith was guilty of legal malpractice because he had failed to file the bankruptcy proceedings for which he had allegedly been retained. Ballard’s deposition was taken in the civil suit, but the case had not yet been tried when, in 1984, Ballard was indicted for making false statements in his bankruptcy petition in violation of 18 U.S.C.
 
 *291
 
 § 152. In his bankruptcy petition, Ballard had stated that he had made no transfer of real property within one year preceding the filing of the petition and that he did not have a safe deposit box. In fact, the evidence established that Ballard had transferred the nine-acre tract to Smith, his attorney, and had access to his wife’s safe deposit box obtained in his wife’s name.
 

 Ballard asserts that, in the criminal trial, the district court erred (1) in permitting the deposition taken from him in his civil suit against Smith to be introduced in evidence, in violation of his privilege against self-incrimination; (2) in permitting Smith to testify about Ballard’s communications with Smith and Smith’s responses, in violation of the attorney-client privilege; (3) in failing to dismiss the indictment because of the delay in prosecution; (4) in refusing to allow Ballard to introduce evidence of prose-cutorial misconduct, in violation of his due process rights; and (5) in refusing to give jury instructions requested by Ballard. We discuss Ballard’s contentions in the order he chose to present them, which presumably reflects their relative strength in his eyes.
 

 II.
 

 Ballard’s testimony in his civil deposition was admitted as an admission by a party-opponent pursuant to Federal Rule of Evidence 801(d)(2).
 
 [1]
 
 There is not the slightest suggestion in the record that this testimony was involuntary or that Ballard refused to testify on the basis of self-incrimination. The trial court did not abuse its discretion in admitting the civil deposition.
 
 [2]
 
 Extra-judicial admissions, voluntarily made, are admissible in evidence.
 
 [3]
 
 Their admissibility is not altered by their utterance under oath during the course of the civil proceedings.
 
 [4]
 

 The argument that the defendants in the civil suit fraudulently induced Ballard to make these statements lacks any support in the record. Furthermore, any “impropriety in the taking of [a] deposition[ ] will authorize [its] suppression under the fifth amendment if and only if such conduct may be imputed to the government.”
 
 [5]
 
 The record here lacks any evidence to support a contention that the government was involved in any way in the taking of Ballard’s civil deposition. Ballard instituted the civil action voluntarily. Although his deposition was sought by the defendants, his giving it was an essential step in prosecution of his civil suit. The charge that Smith and Smith’s counsel in the civil case acted fraudulently and in a manner improper for officers of the court are, so far as basis in the record can be discerned, but constructs of counsel’s imagination in preparing an appellate brief.
 

 Further, Ballard’s ignorance at the time of the taking of his deposition that he might later be charged with a crime is inconsequential. Neither due process nor any procedural rule requires the suppression of a voluntary admission that later proves to be a link in proof of criminality.
 
 [6]
 

 III.
 

 The district court admitted the testimony of Ballard’s former lawyer, Ron
 
 *292
 
 Smith, on the basis that Ballard, by suing Smith for malpractice, waived any privilege shielding his communications with Smith. The government argued on appeal that, because Ballard’s malpractice suit against Smith “arose from the same transactions” that comprised the basis of the criminal suit against Ballard, the waiver of the privilege should extend to the criminal trial. We do not agree. A lawyer may reveal otherwise privileged communications from his clients in order to recover a fee due him, or to defend himself against charges of improper conduct, without violating the ethical rules of confidentiality
 
 [7]
 
 or the attorney-client privilege.
 
 [8]
 
 The mere institution of suit against a lawyer, however, is not a waiver of the privilege for all subsequent proceedings, however related or unrelated.
 

 The conversations between Ballard and Smith, however, were admissible for a different reason. Some time after Ballard’s nine acres had been transferred to his father-in-law and the cash had been put in Mrs. Ballard’s safe deposit box, Ballard came to Smith’s office and asked Smith to file a bankruptcy petition. As Smith testified in the criminal trial, Smith had “explained to Ballard that if a petition was filed on his behalf, that there was a question about transferring of property within one year, and that this transfer from him to me, and then from me to his father-in-law, would have to be disclosed on that petition and chances were that it would relate back to — go back to the bankruptcy court as part of the assets of the estate.”
 

 Later, according to Smith’s testimony, Ballard returned and told Smith that his creditors were pressing him. Smith told Ballard he would “have to disclose this property transfer if he filed within one year.” Smith asked Ballard “to wait, told him to wait, and he said he would.” Subsequently, Ballard retained another lawyer who asked Smith to deliver Ballard’s files to him. Smith complied. Thereafter Ballard, represented by this second counsel, filed the bankruptcy petition in which the assets mentioned by Smith were not disclosed.
 

 Privileges are recognized because lawmakers and courts consider protecting confidential relationships more important to society than ferreting out what was said within the relationship. The privilege for communications between client and attorney ceases when the purpose of che privilege is abused, when the lawyer becomes either the accomplice or the unwitting tool in a continuing or planned wrongful act.
 

 A half century ago, Justice Cardozo wrote: “The [attorney-client] privilege takes flight if the relation is abused. A client who consults an attorney for advice that will serve him in the commission of a fraud will have no help from the law.”
 
 [9]
 
 The admissibility of the evidence does not turn on the lawyer’s complicity in the wrongful transaction: “The attorney may be innocent, and still the guilty client must let the truth come out.”
 
 [10]
 
 Once the party seeking disclosure makes a prima facie case that the attorney-client relationship was used to promote an intended criminal activity, the confidences within the relationship are no longer shielded.
 
 [11]
 
 These pre
 
 *293
 
 cepts have since been applied consistently and have come to be known as the crime or fraud exception to the attorney-client privilege.
 
 [12]
 

 Taking either Ballard’s or Smith’s version of events, a prima facie case of intended illegality is apparent. The conveyance of Ballard’s property to Smith and the delivery of part of the money received from Ballard’s father-in-law to Ballard’s wife were part of a fraudulent scheme to conceal Ballard’s property, either from the tax collector or from Ballard’s other creditors or both. The later conversations between Smith and Ballard relative to bankruptcy were a continuation of that illicit plan to conceal the assets from the bankruptcy court and the persons who were Ballard’s creditors when the petition was filed. Smith’s refusal to proceed and Smith’s advice concerning the illegality of the plan were presumably the reasons Ballard sought other counsel.
 

 We need not concern ourselves with whether Smith would have been required by the Model Code of Professional Responsibility
 
 [13]
 
 or the recently adopted Model Rules of Professional Conduct
 
 [14]
 
 not to reveal the property transaction and his conversations with Ballard on the basis that they were confidences and secrets of his client. The attorney-client privilege exists apart from, and is not coextensive with, the ethical confidentiality precepts.
 
 [15]
 

 IV.
 

 Ballard’s sixth amendment right to a speedy trial and his fifth amendment right to due process were not violated as a result of the four-year lapse of time between his commission of the offense and his indictment.
 

 Although the sixth amendment right to a speedy trial applies only to post-indictment delay, the Supreme Court has held that the due process clause of the fifth amendment protects an accused to some extent against oppressive pre-indictment delay.
 
 [16]
 
 In the recent case of
 
 United States v. Amuny,
 

 [17]
 

 we held that in order to show a denial of due process with respect to pre-indictment delay, the defendant must establish that “(1) the prosecutor intentionally delayed indicting him to gain a tactical advantage
 
 and
 
 (2) the defendant incurred actual prejudice as a result of the delay.”
 
 [18]
 
 The burden of proving both these factors rests on the defendant.
 
 [19]
 

 Ballard has shown no prejudice as a result of the delay, and, absent such prejudice, the constitutional claim must fail. Though Ballard has vaguely alleged some questionable motive behind the government’s pre-indictment delay, he has not alleged any prejudice save the possibility that the memory of witnesses had dimmed and evidence had been lost. Ballard has
 
 *294
 
 not alleged any specific untoward tactical maneuvers on the prosecutor’s part, nor has he pointed to any lost evidence or witnesses with faded memories.
 

 In
 
 United States v.
 
 Edwards,
 
 [20]
 
 we stated: “In order to prejudice the defense to the extent necessary to constitute a speedy trial violation, the faded memory must substantially relate to a material fact in issue.... Vague assertions of faded memory will not suffice.”
 
 [21]
 
 This statement applies equally to due process claims concerned with an alleged unconstitutional preindictment delay.
 
 [22]
 
 Actual prejudice with respect to a material fact must be shown. It has not been demonstrated here.
 

 Ballard’s companion claim is that the Speedy Trial Act
 
 [23]
 
 was violated because 105 days elapsed between filing of the indictment and the beginning of trial. The defendant’s calculations are, however, in error. The speedy trial period does not begin to run until the filing of the indictment or the initial appearance of the defendant before the magistrate, whichever occurs later.
 
 [24]
 
 Any “delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion,” is excluded.
 
 [25]
 
 This automatically excludes delays resulting from pretrial discovery motions.
 
 [26]
 

 Ballard initially appeared before the magistrate on September 20, 1984. Six days later, on September 26, 1984, the government filed a motion to compel reciprocal discovery. The defendant filed a discovery motion on October 10. An agreed order was entered on November 2, 1984, disposing of these motions. Included in this order was a provision to exclude an additional thirty days to allow time for the parties to comply with the order. Thirty-seven days of excludable time, therefore, lapsed between the filing of the government’s motion and the entry of the order. On December 3, 1984, a continuance order was entered because of the trial judge’s inability to hear the case on the scheduled trial date.
 
 [27]
 
 The trial began on January 7, 1985. Excluding only the thirty-seven days during which discovery motions were pending, the trial still began within the seventy days of nonexcludable time allowed by the Speedy Trial Act.
 
 [28]
 
 Moreover, by failing to move for dismissal prior to trial, Ballard waived his right to dismissal under the Act.
 
 [29]
 

 V.
 

 Ballard argues that he was prosecuted in this action as a result of his having instituted the civil suit against Smith and that the district court improperly excluded prof-erred evidence of prosecutorial misconduct. This claim of prosecutorial misconduct in pursuing Ballard’s conviction was not asserted until after the beginning of the trial. Rule 12(b)(1) of the Federal Rules of Criminal Procedure requires “[djefenses and objections based on defects in the institution of the prosecution” to be made before trial.
 

 Moreover, Ballard contends on appeal that “[t]he record of the chronology of litigation of the civil and criminal cases stands as actual proof of prosecutorial mis
 
 *295
 
 conduct.” This statement is based only on a propensity for wishful thinking. A decision to prosecute is within the United States Attorney’s substantial discretion and is generally not subject to judicial review absent a strong showing of actual vindictiveness
 
 [30]
 
 or an equal protection violation.
 
 [31]
 
 Ballard made no such showing.
 

 VI.
 

 Ballard made post-trial motions to set aside the verdict of guilty and to enter a judgment of acquittal on the ground that there had been violations of the grand and petit jury selection process. Assuming any merit to the charges, which is at best doubtful, these issues were again raised too late. Rule 12(b)(2) of the Federal Rules of Criminal Procedure requires that objections to such matters as the grand and petit jury arrays must be raised by motion before trial. Failure to do so constitutes a waiver of the claim.
 
 [32]
 
 In addition, under 28 U.S.C. § 1867(a), a defendant in a criminal case may move to dismiss the indictment on the grounds of improper statutory grand or petit jury selection “before the voir dire examination begins, or within seven days after the defendant discovered or could have discovered, by the exercise of diligence, the grounds therefor.” Failure to act timely waives the objection.
 
 [33]
 

 VII.
 

 The charge that 18 U.S.C. § 152 is unconstitutional for vagueness is, like the other arguments that remain to be addressed, spun from the fiber of last resort. The statute provides, “[wjhoever knowingly and fraudulently makes a false oath or account in or in relation to any case under Title 11” shall be guilty of an offense against the United States. No contrivance exposes a lack of clarity in the statute or a lack of certainty that it proscribes the making of false oaths in relation to a bankruptcy matter.
 

 The defendant also argues the trial court erred in failing to grant a new trial because of various alleged errors committed during trial. These errors concern evidentiary rulings, the denial of the motion of judgment of acquittal, the granting and refusal of various instructions, the denial of the motion for a mistrial, and, with enigmatic obscurity, “such other matters as are of record.”
 

 Because Ballard has offered only a bare listing of alleged grounds for a new trial, without citing supporting authorities or references to the record, these claims are considered abandoned on appeal.
 
 [34]
 
 Notice pleading does not suffice for appellate briefs.
 

 Other arguments flung at the court at random in Ballard’s brief are similarly lacking in merit.
 

 For these reasons, the judgment is AFFIRMED.
 

 [1]
 

 . Fed.R.Evid. 801(d)(2) provides: "A statement is not hearsay if ... [it] is offered against a party and is ... his own statement, in either his individual or representative capacity...."
 

 [2]
 

 .
 
 See United States v. Reed,
 
 715 F.2d 870, 875 (5th Cir.1983).
 

 [3]
 

 .
 
 See United States v. Meyer,
 
 733 F.2d 362, 363 (5th Cir.1984);
 
 United States v. Evans,
 
 572 F.2d 455, 488 (5th Cir.),
 
 cert. denied,
 
 439 U.S. 870, 99 S.Ct. 200, 58 L.Ed.2d 182 (1978);
 
 United States v. Buttorff,
 
 572 F.2d 619, 626 (8th Cir.1978),
 
 cert. denied,
 
 437 U.S. 906, 98 S.Ct. 3095, 57 L.Ed.2d 1136.
 

 [4]
 

 .
 
 United States v. Handley,
 
 763 F.2d 1401, 1404-05 (11th Cir.1985);
 
 Bass v. United States,
 
 409 F.2d 179, 180 (5th Cir.),
 
 cert. denied,
 
 396 U.S. 863, 90 S.Ct. 138, 24 L.Ed.2d 117 (1969).
 

 [5]
 

 .
 
 United States v. Handley,
 
 763 F.2d 1401, 1405 (11th Cir.1985) (citation omitted).
 

 [6]
 

 .
 
 See also United States v. Anderson,
 
 481 F.2d 685, 696 (4th Cir.1973);
 
 Ayres v. United States,
 
 193 F.2d 739, 740-41 (5th Cir.1952).
 

 [7]
 

 .Rule 1.6(b)(2) of the Model Rules of Professional Conduct provides:
 

 A lawyer may reveal ... information [relating to representation of a client] to the extent the lawyer reasonably believes necessary ... [t]o establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer’s representation of the client.
 

 [8]
 

 .
 
 Tasby v. United States,
 
 504 F.2d 332, 336 (8th Cir.1974),
 
 cert. denied,
 
 419 U.S. 1125, 95 S.Ct. 811, 42 L.Ed.2d 826 (1975);
 
 Laughner v. United States,
 
 373 F.2d 326, 327 n. 1 (5th Cir.1967);
 
 see also Doe v. A Corporation,
 
 709 F.2d 1043, 1048-49 (5th Cir.1983).
 

 [9]
 

 .
 
 Clark v. United States,
 
 289 U.S. 1, 15, 53 S.Ct. 465, 469, 77 L.Ed. 993, 1000 (1932).
 

 [10]
 

 .
 
 Id.
 

 [11]
 

 .
 
 See, e.g.,
 
 289 U.S. at 16, 53 S.Ct. at 470, 77 L.Ed. at 1001;
 
 see also In re Grand Jury Proceed
 
 
 *293
 

 ings in the Matter of Fine,
 
 641 F.2d 199, 203 (5th Cir.1981);
 
 United States v. Hodge and Zweig,
 
 548 F.2d 1347, 1354 (9th Cir.1977) and cases cited therein.
 

 [12]
 

 .
 
 See e.g., Garner v. Wolfinbarger,
 
 430 F.2d 1093, 1102 (5th Cir.1970), ce
 
 rt. denied,
 
 401 U.S. 974, 91 S.Ct. 1191, 28 L.Ed.2d 323 (1971);
 
 In re Grand Jury Proceedings,
 
 680 F.2d 1026, 1028-29 (5th Cir.1982);
 
 In re Sealed Case,
 
 754 F.2d 395, 399, 400 (D.C.Cir.1985).
 
 See generally
 
 Wigmore on Evidence, § 2298 (McNaughton rev. 1961); Bartell,
 
 The Attorney-Client Privilege and Work Product Doctrine,
 
 in 1 ALI/ABA, Resource Materials — Civil Practice and Litigation in Federal and State Courts 646-47 (2d ed. 1984) and extensive list of cases cited therein.
 

 [13]
 

 . Disciplinary Rule 4-101.
 

 [14]
 

 . Rule 1.6.
 

 [15]
 

 .
 
 See
 
 G. Hazard & W. Hodes, The Law of Lawyering: A Handbook on the Model Rules of Professional Conduct 89-90 (1985).
 

 [16]
 

 .
 
 United States v. Lovasco,
 
 431 U.S. 783, 789, 97 S.Ct. 2044, 2048, 52 L.Ed.2d 752, 758 (1977);
 
 see also United States v. Marion,
 
 404 U.S. 307, 324-26, 92 S.Ct. 455, 465-66, 30 L.Ed.2d 468, 480-82 (1971).
 

 [17]
 

 . 767 F.2d 1113 (5th Cir.1985).
 

 [18]
 

 .
 
 Id.
 
 at 1119 (emphasis in original);
 
 see also United States v. Townley,
 
 665 F.2d 579, 581 (5th Cir.),
 
 cert. denied,
 
 456 U.S. 1010, 102 S.Ct. 2305, 73 L.Ed.2d 1307 (1982);
 
 United States v. Hendricks,
 
 661 F.2d 38, 40 (5th Cir.1980);
 
 cf. Barker v. Wingo,
 
 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101, 116 (1972).
 

 [19]
 

 .
 
 Amuny,
 
 767 F.2d at 1119.
 

 [20]
 

 . 577 F.2d 883 (5th Cir.1978).
 

 [21]
 

 .
 
 Id.
 
 at 889.
 

 [22]
 

 .
 
 See e.g., United States
 
 v.
 
 Schuster, 777
 
 F.2d 264, 272 (5th Cir.1985);
 
 United States
 
 v.
 
 Wehling,
 
 676 F.2d 1053, 1059 (5th Cir.1982);
 
 United States v. McGough,
 
 510 F.2d 598, 604 (5th Cir.1975).
 

 [23]
 

 . 18 U.S.C. §§ 3161-74.
 

 [24]
 

 . 18 U.S.C. § 3161(c)(1).
 

 [25]
 

 . 28 U.S.C. § 3161(h)(1)(F).
 

 [26]
 

 .
 
 United States v. Schuster, 111
 
 F.2d 264, 267-68 (5th Cir.1985) (quoting
 
 United States v. Horton,
 
 705 F.2d 1414, 1416 (5th Cir.1983),
 
 cert. denied,
 
 464 U.S. 997, 104 S.Ct. 496, 78 L.Ed.2d 689 (1984));
 
 see also United States v. Brim,
 
 630 F.2d 1307, 1312 (8th Cir.1980).
 

 [27]
 

 .
 
 See
 
 18 U.S.C. § 3161(h)(8)(A).
 

 [28]
 

 .
 
 See
 
 18 U.S.C. § 3161(c)(1).
 

 [29]
 

 . 18 U.S.C. § 3162(a)(2) ("Failure of the defendants to move for dismissal prior to trial ... shall constitute a waiver of the right to dismissal under this section.”).
 

 [30]
 

 .
 
 See Miracle
 
 v.
 
 Estelle,
 
 592 F.2d 1269, 1275 n. 11 (5th Cir.1979);
 
 United States v. Pabian,
 
 704 F.2d 1533, 1536-37 (11th Cir.1983).
 

 [31]
 

 .
 
 See Wayte v. United States,
 
 — U.S. -, -, 105 S.Ct. 1524, 1531, 84 L.Ed.2d 547 (1985).
 

 [32]
 

 .
 
 See Davis v. United States,
 
 411 U.S. 233, 241-43, 93 S.Ct. 1577, 1582-83, 36 L.Ed.2d 216, 224-25 (1973);
 
 Talk v. United States,
 
 509 F.2d 862, 863 (10th Cir.1974),
 
 cert. denied,
 
 421 U.S. 932, 95 S.Ct. 1661, 44 L.Ed.2d 90.
 

 [33]
 

 .
 
 United States
 
 v.
 
 Kennedy,
 
 548 F.2d 608, 613 (5th Cir.1977);
 
 United States v. De Alba-Conrado,
 
 481 F.2d 1266, 1269 (5th Cir.1973);
 
 see also United States
 
 v.
 
 Young,
 
 570 F.2d 152, 153 (6th Cir.1978).
 

 [34]
 

 .
 
 Davis v. Maggio,
 
 706 F.2d 568, 571 (5th Cir.1983); Fed.R.App.P. 28(a)(4).