**Brian C. McADOW**

v.

**PROMUS COMPANIES, INC., d/b/a Harrah's Shreveport Casino.**

**Civil Action No. 95–1202.**

United States District Court, W.D. Louisiana, Shreveport Division.

April 25, 1996.

Franklin H. Spruiell Jr., Comegys, Lawrence, Jones, Odom & Spruiell, Shreveport, LA, for plaintiff.

Patrick J. Veters, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, LA, Eskridge E. Smith Jr., Bossier City, LA, for defendant.

### MEMORANDUM RULING

STAGG, District Judge.

Brian McAdow ("McAdow") instituted this action in state court seeking damages under the Jones Act, 28 U.S.C. § 1333, for an injury arising from an accident that allegedly occurred in the fall of 1994 while he was working on the M/V Shreveport Rose ("Shreveport Rose"), then the home of Harrah's Shreveport Casino. Promus Companies, Inc. ("Promus") removed the action and McAdow moved to remand. In his Memorandum Ruling of December 13, 1995 (Rec. Doc. 11), Magistrate Judge Roy S. Payne granted McAdow's motion to remand, and Promus has appealed.

Finding Judge Payne's ruling under the present state of the law to be clearly erroneous, for the reasons set out below, the order of remand is **REVERSED**. This decision is not final until the parties have fully briefed the issue, which the court raises *sua sponte,* of whether this court retains the jurisdiction to act in this matter.

### I. FACTS

The pertinent facts set forth by Judge Payne are adopted:

> The dimensions of the ... Shreveport Rose are 210 feet by 78 feet. The craft was constructed in Morgan City, Louisiana. Upon completion, it travelled to Shreveport, through [sic] navigable waters, with the assist of tugs. Upon reaching Shreveport in March, 1994, it was docked for use as a dockside floating casino. Until the time of its departure from Shreveport in February of 1995, it was moored in a coffer cell in the Red River and connected to the shore through the use of four one-inch diameter steel cables. It was accessed from the shore by steel ramps, and connected to shore-side utility lines (telephone, electric, sewer, water and computer).
>
> The M/V Shreveport Rose is Coast Guard [sic] certified and has the capacity for movement on its own. It has a pilothouse, but not a galley and crew quarters. It has a radar unit which, while the vessel is moored, "is used solely to monitor weather conditions." Except on the two occasions when it arrived in and. departed from Shreveport, it has not been used by Promus to transport cargo and/or passengers over navigable waters. Upon its departure in February, 1995, the craft did not move on its own power but was towed and pushed by tug boats.

Rec.Doc. 11, at 3–4.

### II. LAW

#### A. Standard Of Review

■ Judge Payne's Order of Remand is considered a non-dispositive ruling. *See* F.R.C.P. Rule 72. An order of this nature is reviewed by the district court under the clearly erroneous standard. *See Perales v. Casillas,* 950 F.2d 1066, 1070 (5th Cir.1992).

#### B. Remand Standard

■ Although Jones Act cases are ordinarily non-removable pursuant to 28 U.S.C. § 1445(a), Promus "may pierce the pleadings to show that the Jones Act claim has been fraudulently pleaded to prevent removal." *Lackey v. Atlantic Richfield Co.,* 990 F.2d 202, 207 (5th Cir.1993). Promus must show that McAdow's claims "are baseless in law and in fact and serve only to frustrate federal jurisdiction" and "that there is no possibility that ... [McAdow] would be able to establish a cause of action." *Id.* Taking into account the same type of evidence used in the summary judgment context, all significant questions of fact and all ambiguities in the controlling state law are to be resolved in favor of McAdow. *Carriere v. Sears, Roebuck & Co.,* 893 F.2d 98, 100 (5th Cir.1990).

#### C. Jones Act

■ There is no need to write at great length on the various twists and turns given by courts to the Jones Act. The Fifth Circuit has recently set forth the applicable Jones Act approach to floating casinos in the well-reasoned opinion of *Pavone v. Mississippi Riverboat Amusement Corp.,* 52 F.3d 560 (5th Cir.1995) (Wiener, J.). In *Pavone,* the "Biloxi Belle," from the time it arrived in Mississippi, was a shore-side, floating casino moored in a semi-permanent or indefinite manner. *Id.* at 570. Although it was

susceptible of being moved, and in fact was moved across navigable waters one time in the course of "normal operations" (assuming that movement to avoid the threat of a hurricane on a single occasion can be deemed "normal operations"), which one-time movement was purely incidental to the barge's primary purpose of physically supporting a dockside casino structure.

*Id.* Given these facts,[1] the court held the Biloxi Belle to be (1) removed from navigation; and (2) a work platform at the time of the relevant accidents. *Id.* These conclusions were reached by plugging the relevant facts into the *Desper/Hawn* withdrawn-from-navigation factors [2] and the *Bernard/Gremillion* work platform attributes.[3] *Id.*

### III. ANALYSIS

▮ The Shreveport Rose was both removed from navigation and a work platform before, during, and after McAdow's alleged injury. The structure was, for all intents and purposes, a land-based casino. There is a striking degree of permanent connection between the Shreveport Rose and the shore: "Only by removing steel pins from the ramps, letting loose all lines and cables and lifting the gate of the coffer cell by means of a crane barge" could the Shreveport Rose be freed from its retaining walls. *See* Rec.Doc. 16, Affidavit of Oran Lanclos. Moreover, the casino was not at all self-sufficient. All utilities, including telephone, electric, sewer, water, and computer connections were permanently accessed from the shore. These too would have to be removed for the casino to break free from the concrete barriers separating it from the flow of the Red River.

Indeed, the Shreveport Rose was always used as a casino and a work platform. Gaming tables, slot machines, and cocktails could all be found in abundance, along with the attending service personnel.

There also was full, continuous access to the Shreveport Rose from the shore. The floating casino was never moved, except when it arrived in and departed from its spot on the Shreveport riverfront. While in Shreveport it was never used to transport passengers or cargo. This is due to a Louisiana statute that is a monument to the political skills of those legislators representing the area of the state located in

> any parish which borders the Red River beginning five miles south of the Kansas City Southern Company/Louisiana Arkansas Crossing Railroad Bridge in Rapides Parish and ending five miles north of the Mid–South Company Railroad Bridge in Caddo Parish.

Louisiana Riverboat Economic Development and Gambling Control Act, La.R.S. §§ 4:501–562 (West Supp.1995), at § 4:525(B)(1)(b)(I). This piece of legislative legerdemain produces an economic advantage of considerable magnitude. It eliminates, in the Shreveport and Bossier City markets, the cruising requirements applicable to similar boats located elsewhere in the state of Louisiana. It permits costly utility installations to be shore based. And these privileged boats can be moated, leveed or coffer dammed, thereby lessening the effects of rising and falling river levels. Elsewhere in Louisiana, gambling may *not* be conducted aboard boats in other locations while docked, "unless the ves-

---

1. Judge Payne distinguishes the Biloxi Belle from the Shreveport Rose, characterizing them as "entirely different animals," thus impliedly concluding that *Pavone* does not apply. Judge Payne has painted with far too narrow strokes. Regardless of any structural dissimilarities between the Biloxi Belle and the Shreveport Rose, the approach of *Pavone* certainly is controlling. Thus, in the wake of *Pavone*, a lower court must determine whether the particular facts before it fall within the principles announced therein, even if some factual contrasts exist. The distinctions pointed out by Judge Payne, then, are without a difference.

2. *See Desper v. Starved Rock Ferry Co.,* 342 U.S. 187, 191, 72 S.Ct. 216, 218, 96 L.Ed. 205 (1952) (motorboat "laid up for the winter"), *quoting Hawn v. American S.S. Co.,* 107 F.2d 999, 1000 (2nd Cir.1939).

3. The factors to be considered here are whether: (1) the structure was constructed to be used as a work platform; (2) the structure is moored or otherwise secured at the time of the accident; and (3) although the platform is capable of movement, and is sometimes moved across navigable waters in the course of normal operations, any transportation function is merely incidental to the platform's primary purpose. *Pavone,* 52 F.3d at 570.

sel is docked for less than forty-five minutes between excursions." *Id.* §§ 4:525(B)(1)(a).

Taking a slight divergence, some other interesting, slightly relevant facts (considered by judicial notice) should be noted. Because of increasing business, it became necessary for Harrah's (Promus) to bring in a larger casino. This is why the Shreveport Rose was extracted from its position on the riverfront. The New Orleans Times–Picayune reported in its March 12, 1996 issue that, based upon Louisiana State Police sources, each of the top three revenue-producing floating casinos in the state were from the Shreveport/Bossier City area for the month of February 1996. In that month, Harrah's gross revenue was $12,057,340, Isle of Capri's gross revenue was $12,745,882, and Horseshoe's gross revenue was $14,246,989. No other area in the state rivaled these astonishing numbers.[4] There can be little doubt that the cruising exemption gives the local floating casinos a tremendous economic advantage over their counterparts in this state.

Returning to the main focus, the court simply cannot fathom that the Shreveport Rose can be deemed a vessel for Jones Act purposes with the above considerations in mind. It may, as Magistrate Payne concluded, be a different animal from the Biloxi Belle and other floating casinos,[5] but nevertheless, since being moved to Shreveport it was in its own right a creature of the land. There is no basis in fact or law for concluding that the Shreveport Rose is a vessel for Jones Act purposes and any conclusion to the contrary cannot be supported in light of current Fifth Circuit doctrine. There can be no principled basis to distinguish between a solidly moored barge casino and a solidly moored paddle wheel casino. Neither of these floating objects were, at any time,

"used or intended to be used for transporting freight or passengers." *Hayford v. Doussony,* 32 F.2d 605 (5th Cir.1929). Therefore, the Shreveport Rose is not a vessel for Jones Act purposes. It follows that there is no possibility that McAdow has a cause of action for a Jones Act claim. As such, McAdow fraudulently pleaded his Jones Act claim and Judge Payne's ruling granting McAdow's motion to remand was mistaken and clearly erroneous.

## IV. JURISDICTION

The parties have not raised the issue of whether the court has subject matter jurisdiction, but the court now raises this question *sua sponte.* It is unclear whether 28 U.S.C. § 1447(c) and (d), standing alone, or together with the Clerk of Court's certification of Judge Payne's remand order to state court, deprives this court of jurisdiction. Furthermore, and perhaps most importantly, if the answer to the above question is in the affirmative, does the fact that a district court is reviewing a Magistrate's remand order, rather than an appellate court reviewing a district court's remand order, change this answer? The parties must address these issues in accordance with the briefing schedule given in the accompanying order before the court can render its final decision.

The parties should, in addition to any other jurisprudence they may deem appropriate, read and consider the cases of *Thermtron Products, Inc. v. Hermansdorfer,* 423 U.S. 336, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976); *Browning v. Navarro,* 743 F.2d 1069, 1078–1079 (5th Cir.1984); *New Orleans Public Service, Inc. v. Majoue,* 802 F.2d 166, 167 (5th Cir.1986); *In re Allied–Signal, Inc.,* 919 F.2d 277, 280 (5th Cir.1990); *In re Shell Oil*

---

**4.** The *total* gross revenue for February 1996 was $99,388,170.

**5.** Judge Payne also mentions in his ruling that Judge Walter has ruled, in a separate Jones Act case involving the Isle of Capri casino in Bossier City, that the defendant there was not entitled to a summary judgment on the theory that the "Lady of the Isle" had been withdrawn from navigable waters. *See* Rec.Doc. 11, *citing Benetrix v. Louisiana Riverboat Gaming Partnership,* Civil Action No. 95–0453, 1995 WL 867854 (November 7, 1995 W.D.La.). This ruling has no

effect on the present case. First, the instant case is about the Shreveport Rose, not the Lady of the Isle. Second, the writer strongly believes that the Fifth Circuit's recent decision in *Pavone* controls the outcome of this case. On this legal question, the two local district judges disagree. Although this is both rare and unfortunate, judges must decide according to their own understanding of the law as set forth by controlling authorities. In any event, such differences of opinion will ultimately be cast aside once the Fifth Circuit rules upon these particular cases.

*Co.*, 932 F.2d 1523, 1528 (5th Cir.1991); *McDermott International, Inc. v. Lloyds Underwriters of London*, 944 F.2d 1199 (5th Cir.1991); *In re Digicon Marine, Inc.*, 966 F.2d 158, 160–161 (5th Cir.1992); *In re Medscope Marine Ltd.*, 972 F.2d 107 (5th Cir. 1992); *Hopkins v. Dolphin Titan International, Inc.*, 976 F.2d 924, 926 (5th Cir.1992); *Thomas v. LTV Corp.*, 39 F.3d 611, 616 (5th Cir.1994); *Things Remembered, Inc. v. Petrarca*, —— U.S. ——, 116 S.Ct. 494, 133 L.Ed.2d 461 (1995); *Thompson v. Radosta*, 906 F.Supp. 367, 368–369 (E.D.La.1995); *Sherman v. Gulf Pride Marine Services, Inc.*, 191 B.R. 328 (E.D.La.1996); *City of Jackson, Miss. v. Lakeland Lounge of Jackson, Inc.*, 147 F.R.D. 122, 125 (S.D.Miss. 1993); *In re Foster*, 52 F.3d 343 (Fed.Cir. 1995); *Trans Penn Wax Corp. v. McCandless*, 50 F.3d 217, 225–227 (3rd Cir.1995). The parties should also pay particular attention to *North Jersey Savings & Loan v. Fidelity and Deposit Co. of Maryland*, 125 F.R.D. 96 (D.N.J.1988), and explain whether the reasoning contained therein should apply to the present case.