In re Nelson Bunker HUNT
and Caroline Lewis
Hunt, Debtors.

In re William Herbert HUNT and Nancy
Jane Broaddus Hunt, Debtors.

Bankruptcy Nos. 388–35726–HCA–11, 388–35725–HCA–11.

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

Nov. 5, 1992.

Jordan Green, Lewis and Roca, Phoenix, AZ, Robert M. Cohan, Cohan, Simpson, Cowlishaw, Aranza & Wulff, L.L.P., Dallas, TX, for R. Carter Pate and Steven S.

Turoff as Independent Trustees of the NBH and WHH Liquidating Trusts.

Russell L. Munsch, Munsch Hardt Kopf Harr & Dinan, P.C., Dallas, TX, for Nelson Bunker Hunt and Caroline Lewis Hunt.

Michael P. Gibson, Burleson, Pate & Gibson, L.L.P., Dallas, TX, for William Herbert Hunt and Nancy Jane Broaddus Hunt.

### *MEMORANDUM OPINION ON INDEPENDENT TRUSTEES' MOTION FOR RESOLUTION OF PRIVILEGE DISPUTE*

HAROLD C. ABRAMSON, Bankruptcy Judge.

Came on for hearing on the 9th day of October, 1992, the Motion for Resolution of Privilege Dispute ("Motion") filed by R. Carter Pate and Steven S. Turoff ("Independent Trustees"). Counsel for the Independent Trustees and for the debtors ("Hunts") submitted written briefs, appeared at the hearing, and delivered oral arguments.

The Independent Trustees, who are the liquidating trustees of the Hunts' estates under separate plans of reorganization, have sued several of the Hunts' relatives and other entities to recover preferences and fraudulent transfers in an adversary proceeding styled *Pate, et al. v. Houston Bunker Hunt, et al.*, Adv. No. 391–3331 ("Adversary").[1] Discovery in the Adversary begins November 9, 1992. As part of their discovery effort, the Independent Trustees plan to request documents from, and depose, the Hunts' lawyers and accountants regarding the Hunts' prepetition transactions. The Independent Trustees' Motion, directed toward only the individual Messrs. Hunt and their wives, seeks an order from this Court that (1) declares that the Hunts' attorney-client and accountant-client privileges belong to the Independent Trustees and (2) bars the Hunts from "opposing interviews, document production and depositions of lawyers and accountants based on the privileges." Motion at 3.

The Hunts object to the Independent Trustees' Motion on both procedural and substantive grounds. First, they argue that the Motion should be dismissed because it was not filed as an adversary proceeding under Federal Rule of Bankruptcy Procedure 7001. Second, they argue that the Hunts' privileges do not belong to the Independent Trustees.

This Court has jurisdiction over the subject matter of the Motion under 28 U.S.C. § 1334. The Motion is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (F), (H), and (O) and 11 U.S.C. § 1142.

After reviewing the parties' pleadings and briefs and hearing oral argument, the Court has concluded that the adversary rules listed in Federal Rule of Bankruptcy Procedure 9014 apply to this Motion and that the present controversy involves no issues of fact and is ripe for decision as a matter of law. The Court has reached the following additional conclusions on the substantive questions of professional communications privileges:

(1) The accountant-client privilege does not exist under common-law evidentiary principles applicable to bankruptcy proceedings under Federal Rule of Evidence 501. Therefore, no such privilege belongs to either the Hunts or the Independent Trustees.

(2) The attorney-client privilege regarding prepetition communications did not pass to the Independent Trustees under the terms of the Hunts' plans of reorganization; nor do the Independent Trustees have control of such a privilege. The privilege remains with the Hunts and may be waived only by them.

(3) During the course of discovery in the Adversary, the Independent Trustees may respond to specific privilege-based objections on the ground that the crime-fraud exception to the privilege may apply. This Court will review those objections and responses, as they arise, according to the standards set forth in *United States v. Zolin,* 491 U.S. 554, [109 S.Ct. 2619, 105 L.Ed.2d 469] (1989),

---

**1.** The Hunts themselves, as debtors in the underlying bankruptcy cases, have been dis-

charged through their plans of reorganization. They are not defendants in the Adversary.

and *United States v. Ballard*, 779 F.2d 287 (5th Cir.), *cert. denied*, 475 U.S. 1109, 106 S.Ct. 1518, 89 L.Ed.2d 916 (1986).

## FINDINGS AND CONCLUSIONS

### I. The Procedural Quagmire: Motion or Adversary Proceeding?

The Independent Trustees admit in their Motion that the issue of whether they own (and can waive) the Hunts' privileges is relevant only to the discovery campaign they have planned for the prosecution of the Adversary. Motion at 2. However, they filed the Motion in the Hunts' main consolidated bankruptcy case, not in the Adversary. Furthermore, as the Hunts correctly point out, the Independent Trustees are seeking a declaratory judgment (that the Hunts' attorney- and accountant-client privileges belong to the Independent Trustees) and an injunction (barring the Hunts from objecting to discovery in the Adversary on the basis of those privileges). The Federal Rules of Bankruptcy Procedure specifically direct that actions seeking such relief are adversary proceedings. FED.R.BANKR.P. 7001(7) and (9).

The Independent Trustees contend that their Motion is a contested matter in which "the Trustees are asking the Court to resolve a dispute between the debtors and the Trustees regarding the power and authority vested in the Trustees by the reorganization plans." Reply in Support of Motion for Resolution of Privilege Dispute 2. In the context of a contested matter, this Court recognizes that it might direct the Independent Trustees to seek their declaratory judgment, construing the terms of the Hunts' plans under 11 U.S.C. § 1142 and seeking the determination of privileges and injunctive relief, within the bounds of

Part VII of the Federal Rules of Bankruptcy Procedure. *See* FED.R.BANKR.P. 9014.[2]

The Court finds that, by the provisions of Rule 9014, certain adversary rules listed in Rule 9014 apply. Not only the Hunts but all parties to the Adversary[3] received ample notice of the Motion. The Motion was served on August 13, 1992, more than two months prior to the hearing; the parties received approximately six weeks' notice of the hearing itself. The Hunts, notwithstanding their procedural objections, fully briefed and argued the merits of the privilege issue. This Court cannot discern any prejudice to the Hunts' due process rights in deciding this Motion, at this point, under the adversary rules. *See* FED.R.BANKR.P. 1001 ("These rules shall be construed to secure the just, speedy, and inexpensive determination of every case and proceeding."); *In re Analytical Systems, Inc.*, 71 B.R. 408, 412 (Bankr.N.D.Ga.1987) ("The underlying purpose of incorporating Federal Rules of Civil Procedure into contested matters is to provide due process protections to all parties of a dispute").

The clerk of the bankruptcy court shall be directed to redocket the Motion as an adversary complaint styled *R. Carter Pate and Steven S. Turoff v. Nelson Bunker Hunt, Caroline Lewis Hunt, William Herbert Hunt, and Nancy Jane Broaddus Hunt.* The Independent Trustees will be directed to pay the filing fee applicable to adversary complaints within seven days after entry of the order accompanying this opinion.

Inasmuch as all issues of law have been joined by the Hunts and no issues of fact have been raised in the Motion or the Hunts' replies thereto, the Motion (consid-

---

**2.** Bankruptcy Rule 9014 states, in relevant part: In a contested matter in a case under the Code not otherwise governed by these rules, relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought. No response is required under this rule unless the court orders an answer to a motion. The motion shall be served in the manner provided for service of a summons and complaint by Rule 7004, and, unless the court otherwise directs, the following rules

shall apply: 7021, 7025, 7026, 7028–7037, 7041, 7042, 7052, 7054–7056, 7062, 7064, 7069, and 7071. The court may at any stage in a particular matter direct that one or more of the other rules in Part VII shall apply.

**3.** *See* Motion at 2 n. 1 ("Although the defendants [in the Adversary] have no standing to object to this motion, the Independent Trustees have served a copy of the motion and supporting brief on all the defendants in the [Adversary].").

ered herein as an adversary complaint) is ripe for decision.

## II. The Substantive Controversy: Who Controls the Privileges?

### A. Factual Background

The material facts relevant to the privilege controversy are undisputed. The Hunts filed petitions under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 1101–1174, on September 21, 1988. In December 1989, this Court confirmed plans of reorganization in the respective cases of William Herbert Hunt and wife ("Herbert Hunt") and Nelson Bunker Hunt and wife ("Bunker Hunt"). By separate orders of this Court entered in January 1990, Steven S. Turoff and R. Carter Pate were appointed Independent Trustees of the William Herbert Hunt Liquidating Trust and the Nelson Bunker Hunt Liquidating Trust, respectively.

Under the terms of the Herbert Hunt plan of reorganization, the William Herbert Hunt Liquidating Trust received "all real and personal property of the Hunts' estates, pursuant to § 541 of the Bankruptcy Code, other than the Retained Assets...."[4] The estate retained various choses in action through the Independent Trustee:

> All rights and causes of action pursuant to (i) §§ 502, 542, 544, 545, 546, 550, and 553 of the Bankruptcy Code;[5] (ii) preference claims pursuant to § 547 of the Bankruptcy Code; (iii) fraudulent transfer claims pursuant to § 548 of the Bankruptcy Code; (iv) claims relating to postpetition transactions pursuant to § 549 of the Bankruptcy Code; (v) all claims and causes of action held against third parties as of the Confirmation Date, are hereby preserved for the benefit of the Debtors' estate, except as otherwise provided in Article V, Section 5.2(f) and Article IV, Section 4.6(a). The Independent Trustee shall have the right to bring such claims or causes of action on behalf of the Debtors' estate, subject to Bankruptcy Court approval.

Joint Plan of Reorganization of Herbert Hunt § 15.9. The plan of reorganization in Bunker Hunt's case contains similar, though not identical, language. Any net proceeds of the recited causes of action are to be distributed to creditors.[6]

The two Independent Trustees filed the Adversary on June 11, 1991, seeking the recovery of alleged prepetition preferences and fraudulent conveyances from various defendants alleged to be insiders and relatives of the Hunts. As part of discovery, the Independent Trustees plan to depose the Hunts' prepetition accountants and attorneys and request production of any of the Hunts' files in those professionals' possession. Before discovery begins, however,[7] the Independent Trustees request an order from this Court declaring that the Hunts may not assert their accountant- or attorney-client privileges in objecting to discovery requests and, further, that the Independent Trustees now control those privileges, to assert or waive as they choose.

### B. Law Governing Privileges for Confidential Communications

The law of evidence recognizes that some confidential communications may be privi-

---

**4.** The term "Retained Assets" refers to certain defined interests in real and personal property which were retained by the Hunts.

**5.** The cited sections of the Bankruptcy Code pertain to the following matters:
§ 502: objections to creditor claims;
§ 542: actions for turnover of estate property;
§ 544: strong-arm powers of hypothetical judgment lienholder;
§ 545: avoidance of statutory liens;
§ 546: limitations on trustee's avoidance powers;
§ 550: liability of transferee of avoided transfer; and

§ 553: avoidance of preferential exercise of setoff rights.

**6.** The Joint Plan of Reorganization of Herbert Hunt, ¶ 15.9, provides that "[a]ny proceeds generated from the prosecution or settlement of such claims or causes of action shall be added to the Trust Assets for distribution to Creditor Claims, after deduction of reasonable fees and expenses associated with the prosecution and settlement of such claims or causes of action."

**7.** According to the Independent Trustees, discovery is scheduled to begin on November 9, 1992. Motion at 2.

leged at trial and during discovery, even though they have the effect of withholding relevant information from the factfinder, "because lawmakers and courts consider protecting confidential relationships more important to society than ferreting out what was said within the relationship." *United States v. Ballard,* 779 F.2d 287, 292 (5th Cir.), *cert. denied,* 475 U.S. 1109, 106 S.Ct. 1518, 89 L.Ed.2d 916 (1986). The Federal Rules of Evidence [8] leave the exact contours of the communications privileges to be developed by the federal courts. "The privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the courts of the United States in the light of reason and experience." FED.R.EVID. 501. Extensive bodies of federal case law now exist to provide guidance on the questions of accountant- and attorney-client privileges.

### C. The Accountant–Client Privilege

■ Some states have enacted statutes allowing a testimonial privilege for confidential communications between accountants and their clients. *See, e.g.,* ILL.REV. STAT. ch. 111, ¶ 5533. Apparently the Independent Trustees fear that such an "accountant-client privilege" will be raised during discovery in the Adversary: they ask for an order declaring themselves the owners of the Hunts' accountant-client privileges. The Independent Trustees' fears are unfounded. For nearly twenty years federal courts have followed the rule that "no confidential accountant-client privilege exists under federal law, and no state-created privilege has been recognized in federal cases." *Couch v. United States,* 409 U.S. 322, 335, 93 S.Ct. 611, 619, 34 L.Ed.2d 548 (1973). This Court will likewise refuse to recognize any "accountant-client privilege" asserted by the Hunts or any other party.

### D. The Attorney–Client Privilege

#### 1. *Rationale behind the privilege and the crime-fraud exception*

■ The attorney-client privilege is "the oldest of the privileges for confiden-

tial communications known to the common law." *Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981). The privilege "encourage[s] full and frank communication between attorneys and their clients and thereby promote[s] broader public interests in the observance of law and administration of justice." *Id.* It does so, however, at the cost of withholding relevant information from the factfinder. *Fisher v. United States,* 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976). The delicate balance of the privilege's costs and benefits breaks down "at a certain point, namely, where the desired advice [between attorney and client] refers *not to prior wrongdoing,* but to *future wrongdoing.*" 8 J. WIGMORE, EVIDENCE § 2298, p. 573 (McNaughton rev. 1961) (emphasis in original), quoted in *United States v. Zolin,* 491 U.S. 554, 562–63, 109 S.Ct. 2619, 2626, 105 L.Ed.2d 469 (1985). Therefore, under the crime-fraud exception to the attorney-client privilege, "attorney-client communications lose their privileged character when the lawyer is consulted to further a continuing or contemplated criminal or fraudulent scheme." *United States v. Horvath,* 731 F.2d 557, 562 (8th Cir.1984).

#### 2. *Who controls the privilege in bankruptcy?*

■ Outside of bankruptcy, the attorney-client privilege belongs solely to the client. *In re Impounded Case (Law Firm),* 879 F.2d 1211, 1213 (3d Cir.1989). "It may, however, and, indeed, generally must be asserted for the client by the attorney unless the client directs otherwise." *Id.* In this case, as a practical matter, it will not be the clients—the Hunts—who assert the attorney-client privilege; it is their attorneys who are expected to assert the privilege on the Hunts' behalf. The question posed by the Motion is whether the Independent Trustees can step into the

---

**8.** The Federal Rules of Evidence "govern proceedings ... before United States bankruptcy     judges." FED.R.EVID. 101.

Hunts' shoes and direct the attorneys to do otherwise. This Court concludes that they cannot.

In *Commodity Futures Trading Commission v. Weintraub*, 471 U.S. 343, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985), a unanimous Supreme Court held that "the trustee of a corporation in bankruptcy has the power to waive the corporation's attorney-client privilege with respect to pre-bankruptcy communications." *Id.* 471 U.S. at 358, 105 S.Ct. at 1996. The Court rested its holding on the reasoning of *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979), that bankruptcy problems should be analyzed by the same principles that would govern analogous non-bankruptcy situations.[9] Hence, "[b]ecause the attorney-client privilege is controlled, outside of bankruptcy, by a corporation's management, the actor whose duties most closely resemble those of management should control the privilege in bankruptcy, unless such a result interferes with policies underlying the bankruptcy laws." *Weintraub*, 471 U.S. at 351–52, 105 S.Ct. at 1992.

Justice Marshall, writing for the Court, concluded that the trustee receives "wide-ranging management authority over the debtor" after a corporation files its bankruptcy petition. *Weintraub*, 471 U.S. at 352, 105 S.Ct. at 1993.[10] Therefore, the trustee is "the actor whose duties most closely resemble those of management." Since allowing the trustee to control the corporation's attorney-client privilege helps him or her to investigate fraud, there is no "interfer[ence] with policies underlying the bankruptcy laws," namely the policy of uncovering "hidden assets or looting schemes" for the benefit of creditors. *Weintraub*, 471 U.S. at 354, 105 S.Ct. at 1994.

Importantly, *Weintraub* warns that its holding "has no bearing on the problem of individual bankruptcy":

> Under our holding today, [the attorney-client privilege] passes to the trustee because the trustee's functions are more closely analogous to those of management outside of bankruptcy than are the functions of the debtor's directors. *An individual, in contrast, can act for himself; there is no "management" that controls a solvent individual's attorney-client privilege. If control over that privilege passes to a trustee, it must be under some theory different from the one that we embrace in this case.*

*Weintraub*, 471 U.S. at 356–57, 105 S.Ct. at 1995 (emphasis added). The Hunts, of course, are individuals. This Court has found no "other theory" that will allow it to grant the Independent Trustees' requests without running afoul of the pur-

---

**9.** One commentator has paraphrased *Butner's* logic as follows:

It is necessary that some changes in the debtor's situation occur upon the filing of a bankruptcy petition; the appointment of a trustee is an example of such a change. Nevertheless, the proper way to gauge the effect of those changes on the rights of parties involved in a bankruptcy proceeding is to analogize the change to a similar event in nonbankruptcy law and then to use this analogy to establish the substantive rights of the parties in bankruptcy.

William R. Mitchelson, Jr., *Waiver of the Attorney–Client Privilege by the Trustee in Bankruptcy*, 51 U.Chi.L.Rev. 1230, 1233 (1984).

**10.** This factual conclusion is rather suspect in light of the circumstance that the underlying bankruptcy case in *Weintraub* was filed under Chapter 7 of the Bankruptcy Code. Only in rare situations, and under court authority, may a Chapter 7 trustee take over any of a corporate debtor's business operations. *See* 11 U.S.C. § 704(8) (describing Chapter 7 trustee's limited management duties "if the business of the debtor is authorized to be operated"). The essence of Chapter 7 is liquidation—not reorganization, which is the province of Chapter 11. (This distinction also seems to have been lost on William R. Mitchelson, Jr., who, just months before *Weintraub* was decided, wrote a seminal article regarding control of the attorney-client privilege by bankruptcy trustees. The article, cited *supra* note 9, used the same logic as *Weintraub* and reached the same conclusions, but was not cited in *Weintraub*.)

This failure to recognize the different functions of Chapter 7 and Chapter 11 trustees calls into question the foundations of *Weintraub's* broad conclusion that the attorney-client privileges of *all* corporate debtors pass to their bankruptcy trustees. However, it does not affect the reasoning or conclusions in this opinion regarding the privileges of individual debtors.

poses behind the attorney-client privilege or the logic of *Butner.*

As stated previously, the primary purpose of the attorney-client privilege is to encourage clients' "full and frank communication" of facts to their attorneys. *Upjohn,* 449 U.S. at 389, 101 S.Ct. at 682. Such communication will presumably be inhibited if clients cannot expect continued confidentiality when they find themselves in bankruptcy. *See* Niel E. Herman, *Who Controls the Attorney–Client Privilege in Bankruptcy?,* 13 HOFSTRA L.REV. 549, 584 (1985) ("A rational individual would not divulge sensitive information to an attorney who might be forced to reveal the information if the individual suffers a financial reversal.").

▮ The Independent Trustees argue that the Hunts will not be harmed by the attorneys' disclosures because they received bankruptcy discharges, the time for objecting to the discharges has passed, and the Hunts are not liable for the fraudulent conveyance claims. The Hunts reply, erroneously,[11] that "[t]he relief requested in the [Motion] would possibly violate the Debtors' Fifth Amendment rights guaranteed by the United States Constitution." Bunker Hunt's Motion to Dismiss and Response to Motion for Resolution of Privilege Dispute 4. Both arguments are irrelevant. The Hunts' right to assert the attorney-client privilege does not disappear simply because this Court may think disclosure will not harm them.

▮ It is true that, in civil proceedings, the attorney-client privilege is merely an evidentiary principle and not a constitutional right. *Clutchette v. Rushen,* 770 F.2d 1469, 1471 (9th Cir.1985), *cert. denied,* 475 U.S. 1088, 106 S.Ct. 1474, 89 L.Ed.2d 729 (1986). Nevertheless, the expectation of the individual client—an expectation that is honored in evidentiary law outside of bankruptcy—is that, unless he abuses the attorney-client relationship by using it in furtherance of crime or fraud, he and no-one else will decide when to waive his privilege.[12] The individual debtor who seeks legal advice on his own behalf is thus fundamentally different from the corporate debtor's manager. The manager cannot expect to retain control over his corporation's attorney-client privilege forever, because new management may replace him. This distinction is widely recognized among courts, commentators, and the Supreme Court, in *Weintraub* and elsewhere. *See Weintraub,* 471 U.S. at 356–57, 105 S.Ct. at 1995; Proposed Federal Rule of Evidence 503(c) (allowing the trustee of a corporation or other organization to claim the privilege, but not the trustee for an individual's estate); *In re Silvio de Lindegg Ocean Developments of America, Inc.,* 27 B.R. 28 (Bankr.S.D.Fla.1982) ("There is no reason why the trustee cannot waive a corporate debtor's attorney-client privilege. There is

---

**11.** First, the Independent Trustees do not seek control over the Hunts' Fifth Amendment privileges. Independent Trustees' Reply in Support of Motion for Resolution of Privilege Dispute 4.

Second, the Independent Trustees do not seek to compel testimony from the Hunts; they seek testimony from the Hunts' attorneys, who do not have standing to raise the Fifth Amendment privilege on behalf of their clients.

[The privilege against self-incrimination] "was never intended to permit [a person] to plead the fact that some third person might be incriminated by his testimony, even though he were the agent of such person … [T]he Amendment is limited to a person who shall be compelled in any criminal case to be a witness against *himself*."
*Fisher v. United States,* 425 U.S. 391, 398, 96 S.Ct. 1569, 1575, 48 L.Ed.2d 39 (1976), quoting *Hale v. Henkel,* 201 U.S. 43, 69–70, 26 S.Ct. 370, 50 L.Ed. 652 (1906) (emphasis in original).

Third, a proper assertion of the Fifth Amendment privilege requires three elements: (1) a compelled disclosure, (2) found to be testimonial, (3) which is incriminating. *In re Piperi,* 137 B.R. 644 (Bankr.S.D.Tex.1991), citing *Andresen v. Maryland,* 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976). Presumably the Hunts have not been compelled to make disclosures of any kind to their attorneys. This Court's compelling the Hunts' attorneys to testify against the Hunts (in the absence of any other applicable privilege) would not amount to compelling the Hunts to testify against themselves.

**12.** As the distinguished Professor Jay Westbrook of The University of Texas School of Law has commented to this Court, an individual does not forfeit his soul merely because he files a bankruptcy petition.

every reason, as I see it[,] why the trustee cannot waive an individual debtor's attorney-client privilege."); *In re Fairbanks*, 135 B.R. 717 (Bankr.D.N.H.1991) (acknowledging *Weintraub*'s individual/corporate distinction and finding "some other theory" under which to hold, in involuntary Chapter 7 case, that absentee debtor's privilege may be controlled by trustee); Stephen F. Black, *The Debtor's Attorney–Client Privilege in Bankruptcy*, 40 BUS.LAW. 879, 887 (1985) ("The case for postbankruptcy survival [of a debtor's attorney-client privilege] is stronger in some contexts than in others. When the debtor is a natural person, the privacy concerns underlying the privilege are far more significant than when the debtor is a corporation or other business entity."); Mitchelson, *supra* note 9, at 1259 (theory that individual and corporate debtors should be treated alike vis-à-vis the privilege issue "is fundamentally unsound: it completely neglects the non-bankruptcy difference, which should be reflected in bankruptcy law, between directors asserting a corporation's privilege and an individual asserting his own privilege"). *Contra In re Smith*, 24 B.R. 3 (Bankr.S.D.Fla.1982) (individual debtor's attorney-client privilege passes to the bankruptcy trustee); *Commodity Futures Trading Comm'n v. Weintraub*, 722 F.2d 338, 342–43 (7th Cir.1984), *rev'd*, 471 U.S. 343, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985) (corporate and individual debtors should be treated equally in regard to transfer of their attorney-client privileges to bankruptcy trustees).

Distinguishing between individuals and corporations in determining whether the attorney-client privilege passes to the bank-

ruptcy trustee is consistent with the *Butner* analysis used in *Weintraub*. The *Weintraub* Court rested its holding, following *Butner*, on the fact that the bankruptcy trustee most closely resembles the person controlling the privilege outside of bankruptcy, namely, the corporate manager. For an individual, the more appropriate nonbankruptcy analogy is to a seller of assets:

> The trustee of an individual debtor assumes control over most of the assets of that individual, just as he does in the case of a corporate debtor. The trustee, however, does not control the individual himself; he cannot force the debtor to work, to change jobs, or to do anything the individual debtor does not wish to do. The trustee, in effect, has no more control over the activities of an individual debtor than does a person who has purchased all of that person's assets: he is only given the power to control the use of the assets. The mere transfer of assets from one person to another does not entail the transfer of the individual's attorney-client privilege as well.

Mitchelson, *supra* note 9, at 1259 (footnotes omitted).

Although the Independent Trustees were appointed pursuant to a plan of reorganization in a Chapter 11 case, they are performing substantially the same functions vis-à-vis the Hunts as a Chapter 7 trustee would.[13] They are certainly not "managing" the Hunts' affairs. The mere fact that the Hunts, as debtors-in-possession, transferred their avoidance causes of action to the Independent Trustees does not mean they transferred their privileges as

---

**13.** The Independent Trustees' powers to pursue avoidance actions are very similar to those of trustees of bankruptcy estates under the Bankruptcy Code. *See Pate, et al. v. Hunt, et al., Revised Memorandum Opinion on Defendants' Motions to Dismiss and Motion for Partial Summary Judgment*, Adv. No. 391–3331, slip op. at 8 (Bankr.N.D.Tex. Sept. 29, 1992) ("§ 15.9 of the Herbert Hunt plan is largely a neat paraphrase of the Code's scattered grants of power to the trustee to pursue certain of the estate's claims against third parties....").

Nevertheless, the Independent Trustees are not creatures of the Bankruptcy Code; they are

trustees of a contractual, state-law trust. Under the terms of that trust, they received certain assets from the Hunts' bankruptcy estate, including the right to pursue avoidance actions. As state-law trustees who are basically transferees and liquidators of assets, the Independent Trustees presumably receive lesser powers than bankruptcy trustees, to the extent such powers are not specifically granted in the Hunts' plans. Certainly if a bankruptcy trustee could not assert the Hunts' privileges, as this Court concludes, the Independent Trustees may not assert them either.

well.[14] *See In re Yarn Processing Patent Validity Litigation,* 530 F.2d 83, 90 (5th Cir.1976) ("The relationship between an attorney and his client is personal. As in all relationships of this nature, the rights and duties may not generally be assigned or delegated without the consent of all parties...."); *Federal Deposit Insurance Corp. v. McAtee,* 124 F.R.D. 662 (D.Kan. 1988) (transfer of cause of action does not generally transfer attorney-client privileges pertinent to that cause of action); *Federal Deposit Insurance Corp. v. Amundson,* 682 F.Supp. 981, 986–87 (D.Minn.1988) (distinguishing bankruptcy trustee described in *Weintraub* from corporate successors who are mere liquidators and holding that FDIC, as liquidator of failed bank's assets, does not acquire the bank's privileges). Since the Hunts' reorganization plans are silent as to the transfer of privileges along with the avoidance actions, such a transfer was obviously not part of those bargained-for exchanges. *Cf.* Independent Trustees' Reply in Support of Motion for Resolution of Privilege Dispute 5 (conceding that the plans evidenced *"no agreement* as to who controls the privileges") (emphasis in original).

Because allowing the Independent Trustees to waive the Hunts' privileges contradicts the purposes and expectation interests behind the attorney-client privilege, as well as the dicta and underlying logic of *Weintraub,* this Court holds that only the Hunts may waive whatever attorney-client privileges they hold regarding pre-bankruptcy communications. Of course, the Hunts and their attorneys have no privilege to waive or assert if some exception to the privilege applies.

### 3. The crime-fraud exception to the privilege

■ As discussed *supra* in Part II.D.1. of this opinion, the attorney-client privilege does not exist "when the lawyer becomes

either the accomplice or the unwitting tool in a continuing or planned wrongful act." *United States v. Ballard,* 779 F.2d 287, 292 (5th Cir.), *cert. denied,* 475 U.S. 1109, 106 S.Ct. 1518, 89 L.Ed.2d 916 (1986). "A client who consults an attorney for advice that will serve him in the commission of a fraud will have no help from the law." *Clark v. United States,* 289 U.S. 1, 15, 53 S.Ct. 465, 469, 77 L.Ed. 993 (1932), quoted in *Ballard,* 779 F.2d at 292.

This Court expects that, because of the nature of the claims the Independent Trustees have asserted in their adversary complaint, the crime-fraud exception will become an issue if the Hunts or their professionals assert the attorney-client privilege. This Court will determine, in specific instances where the privilege is challenged, whether the crime-fraud exception applies.

■ The Supreme Court has provided fairly detailed guidelines regarding the burdens and methods of obtaining *in camera* review to establish the exception applies:

We hold that *in camera* review may be used to determine whether allegedly privileged attorney-client communications fall within the crime-fraud exception. We further hold, however, that before a district court may engage in *in camera* review at the request of the party opposing the privilege, that party must present evidence sufficient to support a reasonable belief that *in camera* review may yield evidence that establishes the exception's applicability. Finally, we hold that the threshold showing to obtain *in camera* review may be met by using any relevant evidence, lawfully obtained, that has not been adjudicated to be privileged.

*United States v. Zolin,* 491 U.S. 554, 574–75, 109 S.Ct. 2619, 2632, 105 L.Ed.2d 469 (1989). The *Zolin* Court declined to decide what quantum of ultimate proof is re-

---

**14.** The United States Bankruptcy Court for the Northern District of Texas has adopted a different position on this issue in a ruling styled *Whyte v. Williams (In re Williams),* 152 B.R. 123 (Bankr.N.D.Tex.1992) (Felsenthal, B.J.). *Whyte,* in a factual scenario similar to the one in this case, concluded that a liquidating trustee, as the owner of a cause of action and a fiduciary to creditors, must exercise control over all evidentiary privileges relevant to that action. Based on the legal reasoning contained in this opinion, this Court respectfully disagrees with *Whyte.*

quired, with or without *in camera* review, to establish the exception and disallow the privilege. *See Zolin*, 491 U.S. at 554–55 n. 7, 109 S.Ct. at 2626 n. 7. The Court of Appeals for the Fifth Circuit, however, has recently restated its longstanding position on that subject:

> To invoke the crime/fraud exception, a party must establish a *prima facie* case that a crime has been committed.... A party must present evidence of an intent to deceive to establish a *prima facie* case of fraud or perjury.

*Industrial Clearinghouse, Inc. v. Browning Manufacturing Division of Emerson Electric Co.*, 953 F.2d 1004, 1008 (5th Cir. 1992). *See also United States v. Ballard*, 779 F.2d 287 (5th Cir.), *cert. denied*, 475 U.S. 1109, 106 S.Ct. 1518, 89 L.Ed.2d 916 (1986) (discussing the requisite *prima facie* showing in the context of a prosecution for bankruptcy fraud).

In sum, if the crime-fraud exception is invoked, its proponents must establish a *prima facie* case of crime or fraud, including the requisite intent. If *in camera* review is to be part of the *prima facie* showing mandated by *Industrial Clearinghouse*, the proponents must follow the procedure mandated by *Zolin* regarding the "threshold" showing of extrinsic evidence of crime or fraud.

E. Ownership of the Hunts' Professionals' Files Under 11 U.S.C. § 541

The Independent Trustees plan to request that the Hunts' accountants and attorneys turn over all of their Hunt files. Because the files maintained by the Hunts' professionals belonged to the Hunts prepetition, the Independent Trustees argue that the files passed to the Hunts' bankruptcy estates postpetition under 11 U.S.C. § 541 and then to the Independent Trustees under the terms of the Hunts' reorganization plans. This Court agrees that the files now belong to the Independent Trustees.

However, as discussed *supra* in Part II.D.2. of this opinion, the transfer of a debtor's assets—*i.e.*, the professionals' files—to a liquidating trustee does not imply a simultaneous transfer of the debtor's

attorney-client privileges, absent a specific agreement among the parties. Therefore, the foregoing conclusions regarding the attorney-client privilege and the crime-fraud exception apply to document requests as well as depositions.

III. Conclusion

Based on the foregoing reasoning and authorities, this Court concludes that the Independent Trustees' Motion is in the nature of an adversary proceeding, namely a declaratory judgment action, with no material issues of fact; that the accountant-client privilege does not exist under the federal common law of privilege applicable to this case; that the attorney-client privilege has not passed to the Independent Trustees and is waivable only by the Hunts; and that the applicability of the crime-fraud exception to any attorney-client privilege asserted in the discovery process connected with the Adversary will be determined in the manner outlined above.

An order consistent with these findings shall be entered forthwith.