In re Robert W. RIGBY, Jr., Debtor.

Jason R. SEARCY, Trustee, Plaintiff,

v.

Robert W. RIGBY, Jr., Kathleen Rigby,
and the Kathleen S. Rigby Trust,
Defendants.

Bankruptcy No. 94–60106.
Adv. No. 95–6039.

United States Bankruptcy Court,
E.D. Texas,
Tyler Division.

Oct. 3, 1995.

Jason R. Searcy, Trustee, Longview, TX.

Ramona Stephens Notinger, Department of Justice, Tax Division, Dallas, TX, for Internal Revenue Service.

F.R. ("Buck") Files, Bain, Files, Allen & Worthen, Tyler, TX, for J. Robert Dobbs, Jr., and John Berry.

## ORDER DENYING AMENDED MOTION TO QUASH SUBPOENA DUCES TECUM

HOUSTON ABEL, Chief Judge.

Before the Court is an Amended Motion to Quash Subpoena Duces Tecum ("Motion") filed by J. Robert Dobbs, Jr. ("Dobbs") and John F. Berry ("Berry") on August 30, 1995. The original Motion to Quash Subpoena Duces Tecum was filed on August 17, 1995 by Dobbs and was amended to add Berry as a movant. Dobbs and Berry are attorneys owning equal shares in the firm of Pye, Dobbs & Berry. Collectively, Dobbs and Berry have represented both the Debtor Robert W. Rigby, Jr. and his wife Kathleen S. Rigby (hereafter collectively referred as "Rigbys").

The Chapter 7 Trustee, Jason Searcy ("Searcy"), served Dobbs with a subpoena duces tecum seeking discovery of any information he may have regarding his representation of the Rigbys. Included within the production request is all documents pertaining to the Rigbys' tax battle with the Internal Revenue Service ("IRS") and all documents pertaining to two legal documents Dobbs prepared for the Rigbys: (1) a Partition Agreement as to Part of Existing Community Property ("Partition Agreement"); and (2) The Kathleen S. Rigby Trust ("Trust"). Dobbs and Berry

assert that all the requested information is either protected by the attorney-client privilege or work product privilege. Searcy and the IRS respond by asserting that the crime-fraud exception is applicable and therefore all the privileged information is discoverable. Because the Subpoena Duces Tecum is only applicable to Dobbs, the Court need not determine at this time any privilege that Berry may assert.

In accordance with Federal Rule of Bankruptcy Procedure 7052, the following constitutes the Court's findings of fact and conclusions of law. Where appropriate, findings of fact shall be deemed conclusions of law and conclusions of law shall be deemed findings of fact.

### JURISDICTION

The Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (H) & (O).

### BRIEF BACKGROUND

On August 25, 1986, Debtor Robert Rigby signed a Plea Agreement wherein he agreed to enter a plea of guilty for one count of federal income tax evasion for tax year 1981. In the Plea Agreement, Debtor Robert Rigby stipulated that he had an additional $53,-000.00 of taxable income for tax year 1981 over the amount he declared. Pursuant to the Plea Agreement, the United States District Court for the Eastern District of Texas entered on August 30, 1988, a judgment against Debtor Robert Rigby. The judgment required Debtor Robert Rigby to serve six months in a jail type or treatment type institution, placed him on probation for five years, and assessed a fine of $2,500.00.

On October 27, 1989, Debtor Robert Rigby signed an IRS form power of attorney wherein he agreed to allow Dobbs to represent him with respect to his 1981 federal income tax liability. In December 1990, the IRS served Debtor Robert Rigby with a Notice of Deficiency which stated that he owed an additional $117,614.38 in taxes and $70,861.19 in penalties for tax year 1981. In response to the Notice of Deficiency, Dobbs

filed on the behalf of Debtor Robert Rigby a Petition in United States Tax Court contesting the 1981 total tax deficiency of $188,457.57.

In January 1992, serious negotiations to settle this dispute were started between Dobbs and Elizabeth Beck ("Beck"), the attorney representing the IRS in the tax court litigation. During the settlement negotiations, Dobbs stated in a letter dated January 21, 1992 to Beck that Debtor Robert Rigby would settle if the IRS would concede 25% of the taxes, penalties and interest attributable to the Underwood Neuhaus Brokerage Account. In discussing the settlement offer with Dobbs, Beck indicated to him that even with the 25% reduction, the ultimate tax liability was still going to rather large after accrued interest is added—in excess of $300,000.00. After both side apparently became comfortable with the settlement proposal and its ramifications, a settlement was reached on or about April 8, 1992. In accordance with the settlement, the tax court entered on April 14, 1992, its Decision wherein Debtor Robert Rigby was assessed a tax liability in the amount of $95,741.00 and a penalty in the amount of $59,924.50.

Unbeknown to the IRS, at the same time that Dobbs was negotiating a settlement with the IRS, Dobbs was devising a scheme that would make Debtor Robert Rigby virtually insolvent. On March 25, 1992, just days before the settlement with the IRS was finalized, the Rigbys executed several legal documents prepared by Dobbs. One document was the Partition Agreement executed pursuant to § 5.52 of the Texas Family Code and Article 16, § 15, of the Constitution of the State of Texas. In the Partition Agreement, Debtor Robert Rigby transferred to Kathleen Rigby his community interest in assets purportedly worth a total of $468,200.00 to be owned by Kathleen Rigby as her separate property. In exchange for Debtor Robert Rigby's community property interest, Kathleen Rigby transferred to Debtor Robert Rigby her community property interest in assets purportedly worth a total of $471,930.40 to be owned by Debtor Robert Rigby as his separate property. Although the purported value of the assets transferred were relatively equal, the actual benefits to the Rigbys were not equal. The assets the Debtor Robert Rigby received were heavily encumbered by liens with little to no equity while the assets Kathleen Rigby received were debt free. Specifically, $436,500.00 of the assets Kathleen Rigby now claims as her separate property consisted of money held in either a money market fund ($235,000.00), CD ($200,000.00), or checking account ($1,500.00). Concurrently with the execution of the Partition Agreement, the Trust was established with Kathleen Rigby as the trustee and beneficiary. Kathleen Rigby conveyed to the Trust the assets she now claims as her separate property under the Partition Agreement.

In January 1993, the IRS filed a tax lien against Debtor Robert Rigby reflecting a total unpaid assessment of $362,202.47 for tax year 1981. In response to the tax lien, Debtor Robert Rigby filed with the assistance of Dobbs IRS form 433 wherein he offered to compromise his long dispute with the IRS for $100,000.00 on the basis of his alleged "inability to pay". However, Debtor Robert Rigby did not disclose in his offer in compromise the transfer of his community property interest to Kathleen Rigby. Further, Debtor Robert Rigby did not disclose the fact that since the end of March 1992, Kathleen Rigby has used the assets of the Trust to support Debtor Robert Rigby. Specifically, Kathleen Rigby in November 1993 used funds from the Trust to purchase a $340,000.00 house and to decorate the house with expensive furniture. Additionally, Kathleen Rigby has used funds from the trust to purchase vehicles used by Debtor Robert Rigby. Accordingly, Debtor Robert Rigby was not forthright with the IRS when he stated that he was unable to pay the assessed 1981 tax liability.

## ANALYSIS [1]

1. At the hearing, the Court based its oral ruling on its interpretation of TEXAS RULE OF CIVIL EVIDENCE 503(d)(1). Although the Court will not look to Texas law in this opinion, the Court finds that under both Texas law and federal common law the result is the same.

## A. Attorney–Client Privilege [2]

 A well recognized exception to the attorney-client privilege is when the services of the attorney were used in the furtherance of a crime or fraud. *See Clark v. United States*, 289 U.S. 1, 15, 53 S.Ct. 465, 469–70, 77 L.Ed. 993 (1933) ("A client who consults an attorney for advise that will serve him in the commission of a fraud will have no help from the law"). To establish that the crime-fraud exception is applicable, the party requesting the information alleged to be privileged, here Searcy and the IRS, must establish a *prima facie* case that the attorney-client relationship was used to promote a crime or fraud. *Clark*, 289 U.S. at 15, 53 S.Ct. at 469–70; *United States v. Ballard*, 779 F.2d 287, 292 (5th Cir.1986), *cert. denied*, 475 U.S. 1109, 106 S.Ct. 1518, 89 L.Ed.2d 916 (1986). Included as part of the *prima facie* case of fraud is evidence of an intent to deceive. *Industrial Clearinghouse, Inc. v. Browning Mfg. Div. of Emerson Elec. Co.*, 953 F.2d 1004, 1008 (5th Cir.1992). A *prima facie* case is met when the party with the burden "will prevail until contradicted and overcome by other evidence.... [a] case which has proceeded upon sufficient proof to that stage where it will support finding if evidence to contrary is disregarded." *In re Grand Jury Proceedings*, 641 F.2d 199, 203 (5th Cir.1981) (quoting BLACK'S LAW DICTIONARY (4th ed. 1968)). "The application of the attorney-client privilege is a 'question of fact, to be determined in the light of the purpose of the privilege by judicial precedents.'" *United States v. Neal*, 27 F.3d 1035, 1048 (5th Cir.1994), *cert. denied*, — U.S. —, 115 S.Ct. 530, 130 L.Ed.2d 433 (1994) (quoting *Hodges, Grant & Kaufmann v. United States*, 768 F.2d 719, 721 (5th Cir.1985)).

 Based upon the timing of Rigbys' actions, the Court finds that a *prima facie* case has been established that the Rigbys executed the Partition Agreement and created the Trust with intent to defraud the IRS. The *prima facie* evidence shows that the Rigbys divided their community property by transferring to Kathleen Rigby their significant assets subject to no encumbrances while at the same time transferring to Debtor Robert Rigby their assets with either little value or that were heavily encumbered. Specifically transferred to Kathleen Rigby were nearly all the liquid assets of the Rigbys that were most readily available to satisfy the tax liability of Debtor Robert Rigby. Kathleen Rigby then immediately conveyed the assets she received to the Trust, of which she was not only the settlor but also the trustee and beneficiary.

The *prima facie* evidence shows that the Rigbys' *sole* intent in executing the Partition Agreement and establishing the Trust was to protect their assets by attempting to place the assets beyond the reach of the IRS. The partitioning of the community property and the establishment of the Trust were done at the same time that Debtor Robert Rigby was negotiating with the IRS for an agreed tax judgment. Taking into consideration Debtor Robert Rigby's history of dishonesty in reporting his tax liability, the *prima facie* evidence shows that the Partitioning Agreement and the Trust were part of an apparent continuing effort by the Rigbys to further avoid paying Debtor Robert Rigbys' 1981 tax liability.

 Whether or not Dobbs was aware of the Rigbys' apparent fraudulent intent for dividing their community property and establishing the Trust is irrelevant to the application of the crime-fraud exception to the attorney-client privilege. *See In re Grand Jury Proceedings*, 43 F.3d 966, 972 (5th Cir.1994). It is the intent of the Rigbys that controls and not that of Dobbs in preparing the documents. However, because Dobbs was assisting the Rigbys in their IRS troubles at the same time he prepared the Partition Agreement and the Trust, the Court is of the opinion he should have been aware of the Rigbys' fraudulent intent.

 The Court finds that whether or not there has been an actual harm caused by the actions of the Rigbys is irrelevant. "No harm, no foul", as espoused by Dobbs, is not the standard. It is the intent of the client that controls and not the success of the

---

**2.** The Court notes that during the hearing the Rigbys refused to affirmatively waive the attor- ney-client privilege. Thus, there is no issue of waiver before the Court.

fraudulent act. *See Neal*, 27 F.3d at 1048 (privilege ends if attorney is consulted regarding an "intended" criminal activity); *In re Hunt*, 153 B.R. 445, 450 (Bankr.N.D.Tex. 1992) (privilege is lost when the attorney is consulted regarding a "contemplated ... fraudulent scheme") (quoting *United States v. Horvath*, 731 F.2d 557, 562 (8th Cir.1984)). The fact that the IRS may or may not be successful in piercing the Trust to satisfy Debtor Robert Rigby's tax liability is not relevant to the Court's consideration today. Therefore, the Court finds that there is more than a *prima facie* case that the Rigbys' used the services of Dobbs to perpetrate a fraud and thus the crime-fraud exception vitiates the attorney-client privilege.

### B. *Work Product Privilege*

 Unlike the attorney-client privilege, the work product privilege is held by both the client and the attorney and may be asserted by either one. *Grand Jury Proceedings*, 43 F.3d at 972. Although it is uncertain in the Fifth Circuit whether an "innocent" attorney may invoke the work product privilege even if a *prima facie* case of fraud has been made to the client, such a fact scenario is not before the Court.

Dobbs was fully aware of Debtor Robert Rigby's tax troubles and the amount of his tax liability. Based on this knowledge, Dobbs not only drafted the Partition Agreement and Trust but advised the Rigbys about the documents. The *prima facie* evidence clearly shows that at the same time Dobbs was negotiating an agreed tax judgment with the IRS he was devising a scheme to make Debtor Robert Rigby insolvent. By preparing the documents which ultimately transferred significant amount of liquid assets to the Trust, Dobbs either did know or should have known that he was assisting the Rigbys in their attempt to defraud the IRS. It is clear to the Court that the legal advise and services of Dobbs was instrumental to the scheme. The Court is of the opinion that under these extraordinary facts, the crime-fraud exception should be extended to the work product of Dobbs as well. In extending the crime-fraud exception to the work product of Dobbs, the Court is aware that the two

privileges are separate and distinct in most situations. However, the rational for using the exception in both areas is identical for all practical purposes. THEREFORE,

IT IS ORDERED that the Motion to Quash is DENIED; FURTHER,

IT IS ORDERED that Dobbs comply with the Subpoena Duces Tecum within fifteen (15) days from the entry of this order; FURTHER,

IT IS ORDERED that this ruling should not be construed as a decision on the admissibility of the information and documents to be disclosed.

IT IS SO ORDERED, ADJUDGED AND DECREED.